**MATALON ♦ SHWEKY ♦ ELMAN PLLC**
**Joseph Lee Matalon**
**David N. Levy**
**450 Seventh Avenue, 33rd Floor**
**New York, New York 10123**
**Tel: (212) 244-9000**
  *Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
                                        :

**THOR 680 MADISON AVE LLC,**     :     **Civil Action No. _____**
                                     :
               **Plaintiff,**     :
                                     :
      **-against-**     :
                                     :
**QATAR LUXURY GROUP S.P.C., and**     :     **COMPLAINT**
**QATAR FOUNDATION FOR EDUCATION,**     :     <u>**AND JURY DEMAND**</u>
**SCIENCE AND COMMUNITY**     :
**DEVELOPMENT,**     :
                **Defendants.**     :
------------------------------------------------------------X

Plaintiff Thor 680 Madison Ave LLC ("Thor" or "Landlord"), through its attorneys Matalon ♦ Shweky ♦ Elman PLLC, complaining of defendants Qatar Luxury Group S.P.C. ("Guarantor") and Qatar Foundation For Education, Science and Community Development ("Qatar Foundation," together with Guarantor, "Defendants"), alleges:

<u>**INTRODUCTION**</u>

1.     Thor is the ground lessee of the building at 680 Madison Avenue in Manhattan. In 2013, it entered into a commercial net-lease with Qatar Luxury Group Fashion USA Inc. ("Tenant"), under which Tenant was required to perform a first-class buildout of the premises, consistent with "Madison Avenue Standards," and operate a retail store for the high-end luxury fashion brand QELA – owned and controlled by the ruling family of Qatar. The lease had a 15-year term, with annual rents beginning at $6.3 million and escalating to nearly $8.9 million. In

breach of the lease, however, Tenant did not build out the premises, never opened for business, and the lease has since been terminated.

2. As a condition for Thor to enter into the lease, Guarantor executed a guaranty of Tenant's lease obligations.

3. Thor now brings this action to recover more than $25,000,000.00 owed by Guarantor under the guaranty.

4. Thor also brings this action to pierce the corporate veil against the Qatar Foundation, and hold it liable for Guarantor's obligations.

## PARTIES

5. Plaintiff Thor is a limited liability company, with an address c/o Thor Equities, LLC, 25 West 39th Street, New York, New York 10018.

6. Upon information and belief, defendant Guarantor is a "segregated portfolio company" organized under the laws of Qatar, with an address at 203 NE Front Street, Suite 101, Milford, Delaware 19963.

7. Upon information and belief, defendant Qatar Foundation is a private, non-profit organization in Qatar, with an address at P.O. Box 5825, Doha, Qatar.

## JURISDICTION AND VENUE

8. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship among the adverse parties, and the amount in controversy, without interest and costs, exceeds $75,000.

9. Plaintiff Thor is a citizen of New York and Maryland for diversity purposes. As a limited liability company, Thor's citizenship is the citizenship of its members. The ultimate

members of Thor are citizens of New York and Maryland. Upon information and belief, neither of the Defendants are citizens of New York or Maryland.

10. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in the Southern District of New York.

11. This Court has personal jurisdiction over Defendants pursuant to New York Civil Practice Law & Rules § 302 because, among other things, Defendants transacted business within the State, and the transactions giving rise to Thor's claims took place within the State.

12. This Court also has personal jurisdiction over Guarantor because it consented to jurisdiction in the State.

13. This Court also has personal jurisdiction over the Qatar Foundation because the corporate veil will be pierced, subjecting Qatar Foundation to liability for the acts and omissions of Guarantor in this State.

**FACTUAL ALLEGATIONS**

**QELA**

14. Tenant was permitted under the lease to operate and do business as a retail establishment under the trade name "QELA."

15. QELA launched in September 2013 as a luxury clothing and accessories label. According to its press release, QELA was "Qatar's first home-grown global fashion brand," with "business aspirations to develop as an international fashion brand[.]"

16. Upon information and belief, the ruling family of Qatar controls, and is the ultimate owner of, Tenant, Guarantor and the "QELA" label. Tenant (Qatar Luxury Group Fashion USA Inc.), is wholly-owned by the Guarantor (Qatar Luxury Group S.P.C.), which in turn is owned by the Qatar Foundation.

17.     Upon information and belief, Tenant and Guarantor are alter egos of the Qatar Foundation.  Tenant and Guarantor have common and overlapping officers and directors, such that the Qatar Foundation was able to exercise and did exercise complete control and domination over the business, activities, management and policies of Tenant and Guarantor, such that Tenant and Guarantor were the mere alter egos of the Qatar Foundation.

18.     Upon information and belief, at all relevant times, there exists common ownership and the presence of an interlocking directorate and executive staff between the Tenant, Guarantor and Qatar Foundation, all of which are ultimately controlled by the Qatar Foundation.

19.     Upon information and belief, at all relevant times, Tenant and Guarantor were completely financially dependent on the Qatar Foundation.

20.     Upon information and belief, at all relevant times, the Qatar Foundation completely interfered with the selection and assignment of the Tenant's and Guarantor's executive personnel, neither of which observed corporate formalities.

21.     Upon information and belief, at all relevant times, the Qatar Foundation completely controlled the Tenant's and Guarantor's marketing and operational policies.

22.     Upon information and belief, Tenant and Guarantor had no separate records, mind, will or existence of their own, were undercapitalized, and acted solely at the direction and in the interest of the Qatar Foundation.

23.     Upon information and belief, Tenant's and Guarantor's funds were intermingled with those of the Qatar Foundation.

**The Lease**

24.     Thor is the landlord of the ground and second floors ("Premises") in the building located at 680 Madison Avenue, New York, New York ("Building").

25.     Thor and Tenant are parties to a lease dated as of December 31, 2013 ("Lease"), whereby Thor leased the Premises to Tenant.

26.     The term of the Lease was "approximately fifteen (15) years and one hundred ninety five (195) days and shall begin on the Commencement Date."

27.     The Lease was a "net lease," such that "Tenant shall have sole responsibility for the care, maintenance, management, operation, control, use and occupancy of the Premises in all respects, and Tenant shall be liable for and shall bear all of the costs and expenses of the operation and maintenance of the Premises."

28.     Under the Lease, Tenant was obligated to build out the Premises, defined as "Tenant's Work."  Tenant was required to promptly perform Tenant's Work and timely submit plans for Landlord's approval.

29.     Tenant further agreed, with time being of the essence, that it would "(i) use diligent efforts to complete Tenant's Work substantially in accordance with such approved plans and specifications as promptly as reasonably feasible and (ii) open for business to the public fully fixtured, stocked and staffed in accordance with Madison Avenue Standards (as hereinafter defined) for at least one (1) day on or prior to the date in the fifteenth (15th ) month after the Commencement Date that is the same numerical date as the Commencement Date (the 'Work Completion Date.'"

30.     Madison Avenue Standards was defined as "the operation, maintenance and repair of the Premises (and the business therein) or the Building, as the case may be, in a manner commensurate with the standards applicable to first-class luxury mixed-use properties consisting of residential and retail uses located on Madison Avenue between 59th Street and 72nd Street in the Borough of Manhattan, New York, New York[.]"

31.     Tenant's agreement to build out the Premises, at Tenant's own cost, and in accordance with Madison Avenue Standards, was a prime consideration for Landlord to enter into the Lease on the rent and other terms specified therein.

32.     Upon termination of the Lease, Landlord contracted to receive a fully-functioning and built-out space, in accordance with Madison Avenue Standards.

33.     A failure to timely perform Tenant's Work and open the Premises for business was a Lease default.  In particular, the Lease stated: "If after the Work Completion Date Tenant has still failed to complete Tenant's Work and open the Premises to the public for business fully fixtured, stocked and staffed in accordance with Madison Avenue Standards, then Landlord shall have the right, but not the obligation, to treat such failure as a default hereunder, giving rise to all of Landlord's rights and remedies hereunder, at law and in equity."

34.     The value of Tenant's Work is at least $10,000,000.00.

35.     Upon Lease execution, Tenant also had to deliver to Thor "the Guaranty executed by Qatar Luxury Group S.P.C.  . . .  in the form annexed" to the Lease.

**Guaranty**

36.     Guarantor executed a guaranty ("Guaranty"), dated as of December 31, 2013.

37.     Guarantor's execution and delivery of the Guaranty was "a condition to the execution by [Thor] of the Lease[.]"

38.     According to the Guaranty, Tenant is "a wholly-owned subsidiary of Guarantor[.]"

39.     The Guaranty states that "Guarantor . . . does hereby unconditionally and irrevocably guaranty to Landlord . . . full and timely payment, performance and observance of, and compliance with, *all of Tenant's obligations under the Lease* and damages, costs and

expenses arising from the holding over by Tenant . . . including, without limitation, the full and prompt payment of all Fixed Rent, Additional Rent and all other charges and sums due and payable by Tenant under the Lease (including, without limitation, Landlord's reasonable attorneys' fees and disbursements) (collectively, the 'Obligations')" (emphasis added).

40.     The Guaranty would continue "through and including the date that Tenant . . . shall have (i) tendered vacant possession of the Demised Premises to Landlord *in the condition required pursuant to the terms of the Lease*, (ii) delivered the keys to the Demised Premises to Landlord and (iii) provided Landlord with not less than two (2) years' prior written notice, in the manner provided in this Guaranty, of Tenant's intention to tender vacant possession of the Demised Premises to Landlord (the date on which the last to occur of (i), (ii) and (iii) shall be deemed to be the 'Final Obligation Date')" (emphasis added).

41.     The Guaranty further provides that "[o]n or before the expiration of the Final Obligation Date, Guarantor shall pay, or shall cause Tenant to pay, to Landlord all Fixed Rent, Additional Rent and all other charges and sums due and payable by Tenant under the Lease due and payable up to and including the Final Obligation Date (but specifically excluding any accelerated Fixed Rent, Additional Rent and all other charges and sums due and payable by Tenant under the Lease)."

42.     If Thor incurs any attorneys' fees to enforce the Guaranty, then Guarantor shall reimburse Thor all such costs, "including without limitation, Landlord's reasonable attorneys' fees and disbursements."

**Tenant's Breaches, And Lease Termination**

43.     Tenant failed to perform Tenant's Work, as required by the Lease, the estimated value of which is a minimum of $10,000,000.00.

44.     Tenant did not pay the rent due on September 1, 2015 in the amount of $525,000.00, nor any payment due thereafter.

45.     Thor served on Tenant a notice of default, dated September 9, 2015 ("Default Notice"), in respect of the rent due on September 1, 2015 and a late charge, for a total of $546,000.00.

46.     The Default Notice stated that, pursuant to the Lease, "if such default is not cured on or before September 17, 2015, which date is at least five (5) days from the date this notice shall be deemed to have been given, Landlord will seek all applicable remedies available under the Lease, including the right to re-enter the Premises and declare the Lease, and the tenancy thereby created, terminated[.]"

47.     Tenant did not cure the default specified in the Default Notice.

48.     Thor accordingly served on Tenant a notice of termination, dated December 9, 2015 ("Termination Notice").  The Termination Notice provided that pursuant to the Lease, Thor "hereby terminates the Lease effective 11:59 p.m. on December 23, 2015 ('Termination Date'), which date is more than five (5) days from the date this notice shall be deemed to have been given, on the ground that Tenant has failed to cure the default in the payment of rent and/or other charges due under the Lease, as demanded in [the Default Notice]."

**Thor Relets The Premises**

49.     On or about July 18, 2016, Thor relet the Premises.

50.     In connection with such reletting, Thor incurred fees and expenses not less than $15,000,000.00, including without limitation the expense of preparing the Premises for a new tenant, tenant allowance, brokers' commissions, and other expenses properly chargeable against

the Premises and the rental therefrom in connection with such reletting.  Under the Lease, Tenant

(and under the Guaranty, the Guarantor) are liable for these fees and expenses.

### COUNT I
**(Breach of Contract – Liability For Tenant's Failure To Build Out
The Premises And Surrender The Premises In Proper Condition, Against Guarantor)**

51.     Thor realleges the foregoing as if set forth in full.

52.     Tenant's failure to perform Tenant's Work, and to surrender possession of the

Premises in its built-out condition in accordance with Madison Avenue Standards, were breaches

of Tenant's obligations.

53.     Such failures, in turn, were breaches of contract by the Guarantor, because the

Guarantor is responsible for all of Tenant's obligations under the Lease..

54.     By reason of such breaches, Thor is entitled to recover an amount to be

determined at trial, but not less than $10,000,000.00 as of the date hereof, together with such

additional amounts as may accrue until judgment is entered, together with reasonable attorneys'

fees and costs incurred by Thor in connection with this action.

### COUNT II
**(Breach of Contract – Reletting Costs, Against Guarantor)**

55.     Thor realleges the foregoing as if set forth in full.

56.     As a result of Tenant's breach of the Lease, Thor has incurred at least

$15,000,000.00 in expenses for reletting the Premises for, including, without limitation,

preparing the Premises for a new tenant, a tenant allowance, brokers' commissions, and other

expenses properly chargeable against the Premises and the rental therefrom in connection with

such reletting.

57.     Guarantor is in breach of the Guaranty for its failure to pay the sums owed to

Thor, as required.

58.     Such failure and refusal constitutes a breach of contract.

59.     By reason of such breach, Thor is entitled to recover an amount to be determined at trial, but not less than $15,000,000.00 as of the date hereof, together with such additional amounts as may accrue until judgment is entered, together with reasonable attorneys' fees and costs incurred by Thor in connection with this action.

## COUNT III
### (Piercing The Corporate Veil/ Alter Ego – Against The Qatar Foundation)

60.     Thor realleges the foregoing as if set forth in full.

61.     At all relevant times, the Guarantor was wholly owned by the Qatar Foundation and was undercapitalized.

62.     The Qatar Foundation controlled Tenant and Guarantor to such a degree as to render them mere agents or instrumentalities of the Qatar Foundation.

63.     The Qatar Foundation exercised its control over Tenant and Guarantor to orchestrate execution of the Lease, and to induce Thor into the execution thereof, to cause a default under the Lease and Guarantor, and abused the privilege of doing business in the corporate form to perpetrate a wrong against Thor.

64.     Thor, therefore, is entitled to pierce the corporate veil of Tenant and Guarantor and pursue its claims directly against the Qatar Foundation.

**WHEREFORE**, Thor demands judgment against Defendants, jointly and severally, in an amount to be determined at trial, but not less than $25,000,000.00 as of the date hereof, together with such additional amounts as may accrue until judgment is entered, together with reasonable attorneys' fees and costs incurred by Landlord in connection with this action, and such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury in this action on all issues so triable.

Dated: November 3, 2017
New York, New York

MATALON ♦ SHWEKY ♦ ELMAN PLLC

By: __s/Joseph Lee Matalon____
Joseph Lee Matalon
450 Seventh Avenue, 33rd Floor
New York, New York 10123
(212) 244-9000
*Attorneys for Plaintiff*
*Thor 680 Madison Ave LLC*