

Squire Patton Boggs (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio  43215

O   +1 614 365 2700
F    +1 614 365 2499
squirepattonboggs.com

Aneca E. Lasley
T    +1 614 365 2830
aneca.lasley@squirepb.com

March 15, 2019

**BY ECF**

Hon. James L. Cott, U.S.M.J.
United States District Court, Southern District of New York
500 Pearl Street, Room 1360
United States Courthouse
New York, NY  10007

    Re:   Thor 680 Madison Ave LLC vs. Qatar Luxury Group S.P.C., *et al.*
           U.S. District Court, Southern District of New York, Case No. 17-cv-08528 (PGG) (JLC)
           Request For Pre-Motion Conference

Hon. James L. Cott:

       This law firm represents Defendant Qatar Luxury Group, S.P.C. ("QLG") in the above-referenced action.  This dispute arises out of a Good Guy Guaranty ("Guaranty") signed by QLG, in which QLG guaranteed certain obligations under a commercial real estate Lease between Plaintiff Thor 680 Madison Ave LLC ("Thor") and Qatar Luxury Group Fashion USA LLC ("Qela"). Thor terminated the Lease after Qela failed to pay rent, and Thor then secured a replacement tenant—the luxury fashion retailer Tom Ford—for the vacated premises.

       There are two categories of requests for which Thor has refused to produce responsive documents: (1) documents related to Thor's negotiations with Tom Ford (QLG's First Request for Production of Documents, Request Nos. 10, 11); and (2) documents related to Thor's other leases and leasing practices (QLG's Second Request for Production of Documents, Request Nos. 1, 2, 5, 7, 19, 21). The parties have been unable to resolve their dispute regarding these requests, and QLG respectfully submits this letter to compel production of the requested documents pursuant to paragraph II(B)(1) of the Court's Individual Rules and Fed. R. Civ. P. 37(a)(3)(B)(iv).

**I.**      **Certification Of Pre-Letter-Motion Telephonic Conference**

       Counsel for the parties discussed these issues in writing on December 19, 2018 and January 17, February 11, February 19, and March 6, 2019. The parties then held a telephonic conference on March 7, 2019 from approximately 5:00-5:16 p.m.  Present on the call were Christopher Haas for QLG and Barbara Shweky for Thor.  As explained in more detail below, Thor's position is that the requests (a) seek documents that are not relevant, and (b) would impose an undue burden, despite QLG's offers to narrow the scope of the requests significantly. The parties were unable to

47 Offices in 20 Countries

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities.

Please visit squirepattonboggs.com for more information.

Hon. James L. Cott, U.S.M.J.
U.S. District Court, Southern District of New York
March 15, 2019
Page 2 of 5

resolve these issues, and Mr. Haas informed Ms. Shweky that QLG believed the parties were at an impasse and would be requesting a conference with the Court.

II.     **Argument**

    A.     **Documents Relating To Thor's Negotiations With Tom Ford**

**First Request for Production No. 10**: "All documents that refer or relate to any attempt by you to find a replacement tenant following the Tenant's alleged default on its Lease obligations."

**First Request for Production No. 11**: "All documents concerning Thor's lease agreement with Tom Ford for the Premises or any other portion of the building located at 680 Madison Avenue, New York, New York 10005."

**The Documents Are Relevant.** Thor has refused to produce any documents relating to its negotiations with Tom Ford. Those documents are relevant to the issues in this case and to QLG's affirmative defenses—including its defenses that Thor failed to mitigate its damages and acted unreasonably in incurring its claimed damages. In Count 2, Thor seeks damages under Section 19.2 of the Lease. Under that section, any Additional Rent owed by Qela must be reduced by the net rent Thor receives from Tom Ford. However, Tom Ford's rent is only approximately 50% of Qela's rent—despite the fact that Tom Ford's lease was signed fewer than three years after the Qela lease. Discovery thus far suggests Thor may have agreed to an artificially low rent for Tom Ford because Thor believed it could recoup the difference from Qela or QLG. The requested documents regarding Thor's negotiations with Tom Ford are relevant to that determination.

Thor has argued that its negotiations with Tom Ford are not relevant because Thor had no duty to mitigate its damages or find a replacement tenant. However, "[i]mplicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance." *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (Ct. App. 1995). "Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." *Id.*; *see also Rubin v. Dondysh*, 146 Misc. 2d 37, 43 (N.Y. City Civ. Ct. 1989) (holding that "an obligation of good faith" in a landlord's dealings with tenants "flows logically from the implied covenant, which exists in any contract, of fair dealing and good faith"). Thus, once Thor chose to mitigate its damages by finding a new tenant, it had a duty to act reasonably and in good faith and its failure to do so (e.g., by agreeing to an artificially low rent for Tom Ford), is relevant to the proper determination of any damages QLG would owe under § 19.2.

**No Undue Burden.** Thor has generally asserted that production of the requested documents would be unduly burdensome. A discovery burden is "'undue' when it outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 318 (S.D.N.Y. 2003). Thor has not argued that there is any financial, time, or resource burden related to this production that it cannot bear. This discovery is critical to resolving the central question in

Hon. James L. Cott, U.S.M.J.
U.S. District Court, Southern District of New York
March 15, 2019
Page 3 of 5

this case: the measure of damages Thor may recover under the Lease and Guaranty, which Thor contends may be in excess of $30 million, and QLG contends may be as little as zero.

    **B.**    **Documents Relating to Thor's Leasing Practices**

        **1.**    **Thor's Other Leases and Guarantees**

**Second Request for Production No. 1:** "All leases that you entered into from January 1, 2010 to January 1, 2018."

**Second Request for Production No. 2:** "All guarantees that you entered into from January 1, 2010 to January 1, 2018."

[QLG subsequently limited the scope of both requests to leases for and guarantees related to commercial retail space in Manhattan from January 1, 2010 to December 31, 2016.]

**The Documents Are Relevant.** Thor's other leases and guarantees are relevant to the proper interpretation of the Qela Lease and Guaranty. The parties dispute the meaning of several critical provisions of the Lease, including (1) whether § 19.2 allows recovery of "Fixed Rent", and (2) which provisions of the lease govern QLG Fashion USA's obligations regarding tender of vacant possession of the property. The parties also dispute several issues under § 2 of the Guaranty, including whether QLG Fashion USA properly (1) gave notice of intent to tender vacant possession, (2) delivered the keys to the premises, and (3) tendered vacant possession of the property in accordance with the Lease.

Thor's other leases and guarantees are relevant to these issues because they "could establish a course of dealing or customary practice on the part of the plaintiff ... relevant to the construction of the terms and provisions of the parties' agreement." *Sedona Corp. v. Open Sols., Inc.*, 249 F.R.D. 19, 24-25 (D. Conn. 2008). "[C]ontracts of a party with third persons may show the party's customary practice and course of dealing and thus supply useful insights into the terms of the present agreement." *McCormick on Evidence* § 198 (6th ed. 2006).

Thor has argued that its other leases are not relevant because they were not all drafted by the same counsel involved in the Qela Lease. However, contracts are interpreted in accordance with the intention of the *parties*, not their counsel. *See Wallingford Shopping, L.L.C. v. Lowe's Home Ctrs., Inc.*, 2001 U.S. Dist. LEXIS 896, at *33-34 (S.D.N.Y. Feb. 2, 2001). Thor has also argued that the requests are overbroad because they are not limited to other leases and guarantees with (a) provisions similar to the Qela Lease and Guaranty, where (b) the parties actually disputed those provisions. That argument has no merit. Thor's other leases and guarantees as a whole are relevant to the determination whether Thor had a standard course of dealing or customary practice that would bear on the disputed terms of the Qela Lease and Guaranty.

Finally, it bears noting that Thor deposed QLG's counsel during the contract negotiations, Eric Schoenfeld, asking him at length about other leases he had drafted over the course of his 29-

year career. None of those leases involved the parties here. Thor cannot pursue discovery into other irrelevant leases and then refuse to provide discovery of their relevant leases.

**No Undue Burden.** Thor has identified approximately 500 commercial retail leases (with related guarantees) responsive to the requests. It has offered to produce only those leases and guarantees subject to the same-language-and-dispute-arising limitations set forth above. It is impossible to determine whether Thor had any customary practice by looking only at documents that contain the same terms *and* were disputed. Nor has Thor offered to produce leases and guarantees within some narrower timeframe or geographic scope. As previously stated, the central issue in this litigation is the measure of damages available to Thor. To determine that measure, the parties must understand the meaning of the relevant contractual provisions giving rise to Thor's claims, particularly if Thor seeks to justify an award in excess of $30 million.

### 2.    Brokerage Commissions And Tenant Allowances

**Second Request for Production No. 5:** "For each lease you entered into after January 1, 2010, documents sufficient to identify (a) the amount of brokerage commissions that you earned for each lease, and (b) the manner in which the commissions incurred for each lease were calculated."

**Second Request for Production No. 7:** "For each lease you entered into after January 1, 2010, documents sufficient to identify (a) the amount of the tenant allowance for each lease, and (b) the manner in which the amount of the tenant allowance for each lease was calculated."

[QLG subsequently limited the scope of these requests to the narrowed subset of leases noted above, entered into between January 1, 2013 and December 31, 2016.]

**The Documents Are Relevant.** The amount of broker commissions and tenant allowances in Thor's other leases are relevant to the calculation of Thor's claimed damages under § 19.2. Thor seeks to reduce the rent received from Tom Ford by the amount of the broker commissions and tenant allowance in that re-letting. While QLG disputes whether the tenant allowance is a valid offset under § 19.2, it also disputes the reasonableness of the Tom Ford broker commissions and tenant allowance. As described above, Thor had a duty to act reasonably in re-letting, and the requested documents are relevant to that reasonableness determination.

Thor argues that the reasonableness of its commissions and allowances is a matter requiring expert testimony, but that does not make the requested documents irrelevant. Indeed, the requested documents are precisely what an expert could consider in reaching his or her opinion on that issue. Thor also argues that its other commissions and allowances are not relevant because they are the result of the unique circumstances of each lease. That argument goes to the weight of the documents, not their relevance.

**No Undue Burden.** Thor argues these requests are unduly burdensome because they would require Thor to review tenant files for hundreds of leases. This argument once again fails to

Hon. James L. Cott, U.S.M.J.
U.S. District Court, Southern District of New York
March 15, 2019
Page 5 of 5

establish any undue burden. The amount of claimed damages relating to this issue is substantial—for the Tom Ford lease, Thor's claimed broker expenses were $3 million and the tenant allowance was $12 million. Moreover, QLG has narrowly tailored the requests to seek only documents sufficient to identify the amount and calculation of broker commissions and tenant allowances.

### 3. Documents Related To Tender Of Vacant Possession

**Second Request for Production No. 19:** "For each lease you entered into after January 1, 2010, all documents that refer or relate to the condition of the property that was the subject of the lease when the tenant tendered vacant possession of the property to you."

**Second Request for Production No. 21:** "For each lease you entered into after January 1, 2010, each and every communication in which a tenant gave you notice of its intent to tender vacant possession of the property that was the subject of the lease."

[QLG subsequently limited the scope of these requests to the narrowed subset of leases noted above, entered into between January 1, 2013 and December 31, 2016.]

**The Documents Are Relevant.** QLG's obligations under the Guaranty terminate upon the satisfaction of certain conditions, including tendering vacant possession of the premises and providing notice of intent to tender the premises. QLG maintains that it satisfied both conditions. Thor disputes whether QLG's notice satisfies the requirements of the Guaranty and whether the premises were tendered in the condition required by the Lease. Thor argues that its practices under other leases and guaranties are irrelevant. However, as noted above, Thor's argument turns on the interpretation of the Lease and Guaranty, and Thor's prior practice in its other leases is relevant to that determination.

**No Undue Burden.** Thor again argues generally that producing these documents would be burdensome, but does not present any facts that establish any undue burden under the law. The termination of QLG's obligations under the Guaranty is a central issue in this case and has a significant impact on the amount of Thor's claimed damages.

### III. Conclusion

For all of these reasons, QLG respectfully requests that the Court enter an order compelling production of the documents described above. We thank the Court for its attention to this matter.

Respectfully submitted,

SQUIRE PATTON BOGGS (US) LLP

/s/ Aneca E. Lasley
Aneca E Lasley

cc: all counsel of record (via ECF)