**MATALON PLLC**
**450 Seventh Avenue, 33rd Floor**
**New York, New York 10123**
**Tel: (212) 244-9000**
**Email: nycourts@trial-lawyer.org**
  *Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                                                             :
**THOR 680 MADISON AVE LLC,**                                :
                                                             :          **17-cv-08528 (PGG)(JLC)**
                        **Plaintiff,**                       :
                                                             :
                   **-against-**                             :
                                                             :
**QATAR LUXURY GROUP S.P.C., and**                           :
**QATAR FOUNDATION FOR**                                     :
**EDUCATION, SCIENCE AND**                                   :
**COMMUNITY DEVELOPMENT,**                                   :
                                                             :
                        **Defendants**.                      :
-------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT**
**QATAR LUXURY GROUP S.P.C.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**


June 20, 2019

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................i

PRELIMINARY STATEMENT ...........................................................................1

ARGUMENT .........................................................................................................3

   I.   QLG'S OBLIGATIONS UNDER
      THE GUARANTY ARE CONTINUING ...............................................3

      A. Tenant Did Not "Provide Landlord With Not Less Than Two
         (2) Years' Prior Written Notice . . . Of Tenant's Intention To
         Tender Vacant Possession Of The Demised Premises To Landlord"...........4

      B. Tenant Did Not "Tender" "Vacant Possession Of
         The Demised Premises To Landlord In The Condition
         Required Pursuant To The Terms Of The Lease" ........................................7

      C. Tenant Did Not Deliver The Keys To Landlord ............................................8

  II.  THOR IS ENTITLED TO RECOVER DAMAGES
      FOR TENANT'S FAILURE TO CONSTRUCT THE PREMISES.....................10

 III.  THOR MAY ELECT AT TRIAL WHETHER TO
      SEEK DAMAGES UNDER SECTION 19.2 OR 19.3 OF THE LEASE...............13

 IV.  SECTION 19.2 OF THE LEASE SHOULD BE REFORMED
      BECAUSE IT DOES NOT REFLECT EITHER PARTY'S INTENT .................18

CONCLUSION ......................................................................................................24

TABLE OF AUTHORITIES

PAGE(S)

CASES

313-315 West 125th St. LLC v. Arch Specialty Insur. Co.,
  138 A.D.3d 601 (1st Dept. 2016)...........................................................................23

331 East 14th St. v. 331 E. Corp.,
  293 A.D.2d 361 (1st Dept. 2002)...........................................................................15

Baratta v. Kozlowski,
  94 A.D.2d 454 (2d Dept. 1983)..............................................................................14

Beal Savings Bank v. Sommer,
  8 N.Y.3d 318 (2007)................................................................................................6

Bigsby v. Barclays Capital Real Estate Inc.,
  329 F.R.D. 78 (S.D.N.Y. 2019)...............................................................................8

Caring Habits, Inc. v. Fund for the Public Interest, Inc.,
  2014 WL 7146041 (S.D.N.Y 2014) .........................................................................4

Chumley's Bar & Rest. Corp. v. Bedford Ct. Assoc.,
  174 A.D.2d 398 (1st Dept. 1991)............................................................................5

Dandong Old-N.East Agric. & Animal Husbandry Co. v. Pasternak Baum & Co.,
  2018 WL 1399207 (S.D.N.Y 2018) .......................................................................22

De Sole v. Knoedler Gallery, LLC,
  974 F.Supp.2d 274 (S.D.N.Y 2013) ......................................................................20

Ez-Tixz, Inc. v. Hit-Tix,
  969 F.Supp. 220 (S.D.N.Y 1997) ..........................................................................11

Fletcher v. Rodriguez,
  47 Misc.3d 582 (Sup. Ct. Queens Co. 2015) .................................................. 14, 15

Granfeld II, LLC v. Kohl's Dept. Stores,
  48 Misc.3d 1210(A), 2015 WL 4275244 (Sup. Ct. Suffolk Co. 2015)...................12

Granite Partners, L.P. v. Merrill Lynch, Pierce, Fenner & Smith,
  2002 WL 31106406 (S.D.N.Y 2002) ......................................................................22

Harris v. Uhlendorf,
    24 N.Y.2d 463 (1969) ............................................................................20, 21

Holland Loader Co., LLC v. FLSmidth A/S,
    313 F. Supp. 3d 447 (S.D.N.Y. 2018), aff'd,
    18-1643-CV, 2019 WL 1976096 (2d Cir. May 3, 2019) ......................................22

IMG Fragrance Brands, LLC v. Houbigant, Inc.,
    679 F.Supp.2d 395 (S.D.N.Y 2009) ......................................................11

In re Carvel Found.,
    8 Misc.3d 1025(A) (Surr. Ct. West. Co. 2002) ............................................22

In re Mills', Est.,
    172 A.D. 530 (1st Dept.), aff'd, 219 N.Y. 642 (1916).......................................9

Ives v. Mars Metal Corp.,
    23 Misc. 2d 1015 (Sup. Ct. 1959) ...........................................................5

McCaffrey v. Strainer,
    81 A.D.2d 977 (3d Dept. 1981).............................................................11

Meyer v. Stout,
    79 A.D.3d 1666 (4th Dept. 2010)............................................................22

Nielsen Co. (U.S.), LLC v. Success Sys., Inc.,
    112 F. Supp. 3d 83 (S.D.N.Y. 2015) .........................................................11

Omega Executive Services, Inc. v. Grant,
    1980 WL 1432 (S.D.N.Y 1980) ............................................................14

Prudential Oil Corp. v. Phillips Petroleum Co.,
    418 F.Supp. 254 (S.D.N.Y 1975) ..........................................................15

Reilly v. Natwest Markets Group Inc.,
    181 F.3d 253 (2d Cir. 1999).................................................................8

Reiss v. Fin. Performance Corp.,
    97 N.Y.2d 195 (2001)......................................................................22

Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers of N.J.,
    706 F.Supp.2d 350 (S.D.N.Y 2009) .........................................................5

Royal Hair Pin Corp. v. Rieser,
    218 N.Y.S.2d 773 (Sup. Ct. Kings Co., modified, 15 A.D.2d 539 (2d Dept. 1961)................15

S.C.J. Realty Corp. v. Williams,
    67 Misc.2d 904 (Civ. Ct. N.Y. Co. 1971) ..................................................................6

Simon v. Boyer,
    51 A.D.2d 879 (4th Dept. 1976), aff'd, 41 N.Y.2d 822 (1977) ................................15

Sofi Classic S.A. de C.V. v. Hurowitz,
    444 F.Supp.2d 231 (S.D.N.Y 2006) ........................................................................15

Teachers Ins. and Annuity Ass'n of Am. v. CRIIMI MAE Services ltd.,
    Partn., 681 F. Supp. 2d 501 (S.D.N.Y. 2010), aff'd, 481 Fed. Appx. 686 (2d Cir. 2012) .........11

Travelers Ins. Co. v. Carpenter,
    411 F.3d 323 (2d Cir. 2005) ....................................................................................13

TVT Records v. Island Def Jam Music Group,
    250 F.Supp.2d 341 (S.D.N.Y 2003) ........................................................................14

U.S. Fid. & Guar. Co. v. Burress,
    844 F. Supp. 1475 (D. Kan. 1994) ..........................................................................20

Wallace v. 600 Partners Co.,
    86 N.Y.2d 543 (1995) .............................................................................................21

Warberg Opportunitistic Trading Fund L.P. v. GeoResources, Inc.,
    112 A.D.3d 78 (1st Dept. 2013) ..............................................................................22

Wellman Sav. Bank v. Adams,
    454 N.W.2d 852 (Iowa 1990) .................................................................................20

Wilmoth v. Sandor,
    259 A.D.2d 252 (1st Dept. 1999) ............................................................................14

Yarmy v. Conte,
    128 A.D.2d 611 (2d Dept. 1987) ...............................................................................5

## RULES

Local Civil Rule 56.1 .....................................................................................................3

**MATALON PLLC**
**450 Seventh Avenue, 33rd Floor**
**New York, New York 10123**
**Tel: (212) 244-9000**
**Email: nycourts@trial-lawyer.org**
   *Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                                                             :
**THOR 680 MADISON AVE LLC,**                                :
                                                             :       17-cv-08528 (PGG)(JLC)
                    **Plaintiff,**                           :
                                                             :
                    **-against-**                            :
                                                             :
**QATAR LUXURY GROUP S.P.C., and**                           :
**QATAR FOUNDATION FOR**                                     :
**EDUCATION, SCIENCE AND**                                   :
**COMMUNITY DEVELOPMENT,**                                   :
                                                             :
                    **Defendants**.                          :
-------------------------------------------------------------X

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT QATAR LUXURY GROUP S.P.C.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Defendant's summary judgment motion is the flip side of plaintiff's on two issues: whether the conditions for liability cut-off on the Guaranty were met, and whether the Lease should be reformed to drop the word "Additional" in Section 19.2.  To defeat defendant's motion, Thor need only show that defendant is *not* entitled to judgment as a matter of law. Although plaintiff thinks that on its own motion it should be granted summary judgment, at a minimum, defendant surely has not shown that the undisputed facts and the law compel judgment in *its* favor on these two issues.  So regardless of the outcome on Thor's motion, defendant's motion should be denied.

Defendant's motion raises two other weak grounds to avoid liability on certain issues. It claims that Thor made a binding, irrevocable "election of remedies" to invoke Section 19.2 as the damages remedies to the exclusion of Section 19.3. (Defendant wants 19.2 because of the typographical error which, if enforced, may result in very little recoverable damages.) As shown below, under New York law a party may defer an election of even inconsistent remedies until trial (or sometimes even after). There is an exception for situations where plaintiff makes an informed and deliberate election which results in an unfair advantage to plaintiff or a detriment to defendant. Here, however, there are no facts that should estop plaintiff from electing either of the two, consistent, contractual damages remedies at trial.

The second new issue is whether the Lease can be construed to eliminate recoverable damages for the admitted breach of Tenant's construction obligations. That argument is silly in light of Section 1.7 (ignored by defendant), which expressly allows Landlord to invoke all of the rights and remedies under the lease, at law, and in equity for Tenant's failure to timely complete the build out. Moreover, while defendant argues that the existence of two remedies for rent default precludes recovery of other types of damages, the Lease itself, in Section 19.4 (captioned "Other Remedies") says precisely the opposite.

For the reasons below, defendant's summary judgment motion should be denied.

**ARGUMENT**

**I.**

**QLG'S OBLIGATIONS UNDER THE GUARANTY ARE CONTINUING**

Guarantor has the burden of proving strict satisfaction of the Guaranty's conditions to avoid full liability under the Lease.  Although it seeks judgment as a matter of law on Count II, declaring that Guarantor's liability under the Guaranty terminated on July 8, 2017, Guarantor has not shown that any of the  three conditions set forth in the Guaranty were ever met.  (Pl. Mem.[1] 13-19)  Tenant did not give at least two years' advance notice that it intended to surrender possession.  Instead, Tenant and Guarantor's notice which fixed an outside date for surrender *less* than two years after the notice, and then disclosed -- inconsistent with an intent to surrender of possession -- that "Tenant is currently conducting a search for a subtenant for the Demised Premises for the remainder of the Term." (Exh. J[2])  Landlord obtained vacant possession a mere five months after the notice, far earlier than the required two years.  (Pl. Mem. 15-16)  Nor did Tenant "tender" vacant possession, and the premises were not "in the condition required pursuant to the terms of the Lease" because Tenant's Work was not completed.  (Pl. Mem. 16-17)  Finally, Tenant did not return the keys to Landlord even though it could have obtained and then returned them.  (Pl. Mem. 18)

Thus, Guarantor's motion seeking judgment in its favor *as a matter of law* borders on frivolous.

---

[1] "Pl. Mem." refers to Plaintiff's Memorandum of Law in Support of its Motion for Partial Summary Judgment dated May 20, 2019.

[2] "Exh." followed by a letter refers to the exhibits attached to the Appendix to Plaintiff's Local Civil Rule 56.1 Statement of Material Facts dated May 20, 2019.

**A.    Tenant Did Not "Provide Landlord With Not Less Than Two
(2) Years' Prior Written Notice . . . Of Tenant's Intention To
<u>Tender Vacant Possession Of The Demised Premises To Landlord"</u>**

Recognizing the deficiencies in its Notice of Intent, Guarantor contends that a party

terminating an agreement by prior written notice need only provide the notice in writing prior to

termination, and invoke the party's termination right in the notice, <u>citing Caring Habits, Inc. v.</u>

<u>Fund for the Public Interest, Inc.</u>, 2014 WL 7146041 (S.D.N.Y 2014) for this proposition.  (Def.

Mem. [3] 8) But <u>Caring Habits</u> does not apply and does not excuse Guarantor from strict

compliance with the *two-years'* advance notice condition in the Guaranty.  In <u>Caring Habits</u>, the

defendant terminated plaintiff as its exclusive agent.  The contract stated that the exclusive

agency could be terminated if after "prior written notice" by defendant, there is a repeated and

marked deterioration in plaintiff's level of service.  Notably, the provision did not specify any

required time period between the "prior written notice" and the termination of the contract.

Defendant sent a "prior written notice" followed by an undated termination letter more than four

years late.  The court rejected plaintiff's argument that defendant had failed to provide the

requisite prior notice, noting that the agreement required "prior written notice" and nothing

more.  By  contrast, the Guaranty expressly requires "not less than two (2) years' prior notice . . .

of Tenant's intention to tender vacant possession of the demised premises to Landlord." Thus,

<u>Caring Habits</u> is of no help to defendant.

Guarantor also contends that its Notice of Intent (initially claimed to have retroactive

effect) should be construed to state a surrender date two years after its date (as required by the

Guaranty) under the "erroneous date rule," and thus deemed compliant. But the erroneous date

---

[3] "Def. Mem." refers to the Memorandum of Law in Support of Defendant Qatar Luxury Group
S.P.C.'s Motion for Partial Summary Judgment dated May 20, 2019.

rule applies only to termination notices. See G.B. Kent & Sons, Ltd. . Helena Rubinstein, Inc., 47

N.Y. 2d 561, 563 (1979) (the erroneous date rule relates to a termination notice which contains

an erroneous termination date); Chumley's Bar & Rest. Corp. v. Bedford Ct. Assoc., 174 A.D.2d

398, 400 (1st Dept. 1991). Guarantor does not cite any authority applying the erroneous date rule

to any other type of notice.  Further, the erroneous date rule does not apply to real property

leases. Id.  Finally, the "erroneous date rule" is unavailing because the two-years' advance notice

condition -- like all the conditions in the Guaranty -- must be "literally performed."[4] (Pl. Mem.

14)  Guarantor's case law cannot be invoked to rewrite a notice which said that possession would

be tendered in *less* than two years to instead say that the possession would be delivered *at least*

two years later.

Guarantor also tries to sidestep the two-years'-advance notice condition, nonsensically

arguing that even though Landlord acquired vacant possession in five months, Guarantor actually

"gave Thor two years' . . .  prior written notice of [Tenant's] intent to tender vacant possession of

the Premises." According to Guarantor, there was compliance with the condition because the

Guaranty "contained no temporal limitation on [Tenant] actually tendering vacant possession."

(Def. Mem. 9)  In other words, defendant is arguing that Landlord merely bargained for a piece

of paper stating an intended surrender date, but it does not matter whether or not such intent was

actually carried out.  But obviously, Landlord wanted to know two years in advance when it

would be getting possession.  Assuming the surrender date can be rewritten in accordance with

the erroneous date rule, Tenant still did not comply, because it caused the repossession to take

---

[4]  Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers of N.J., 706 F.Supp.2d 350
(S.D.N.Y 2009), Yarmy v. Conte, 128 A.D.2d 611 (2d Dept. 1987) and Ives v. Mars Metal
Corp., 23 Misc. 2d 1015 (Sup. Ct. 1959), cited by Guarantor (Def. Mem. p.8), all involved
premature termination notices and are distinguishable from the present case, involving a
backdated notice of intent which did not strictly comply with a condition.

place only five months after the notice.  Guarantor's argument is also wrong because, among other things, it renders meaningless the words "not less than two years' prior written notice" and violates the rule that a contract should not be construed to render any portion meaningless.  Beal Savings Bank v. Sommer, 8 N.Y.3d 318, 324 (2007).  Guarantor's cited authorities, moreover, involving guaranties containing "better" language (see Def. Mem. 9), do not change the requirement that plaintiff get at least two years' advance notice that it would be getting the space back.  Moreover, contrary to Guarantor's claim that "no prejudice can result from [Tenant] tendering vacant possession prior to the expiration of the two-year notice requirement" (Def. Mem. 10)  -- an implicit acknowledgment that possession had to be tendered at least two years after the notice of intent -- Thor lost the lead time to find a replacement tenant, negotiate and sign a  lease, and have the new tenant transition smoothly into the space with a minimum of down time.  Thor was also deprived of the guarantee of monetary compliance with the Lease without having to draw down on the security deposit during the two year period after the notice. (Pl. Mem. 15-16; Polese Aff.[5] ¶¶ 7, 9, 10)

Finally, Guarantor cannot escape the fact that the Notice of Intent did not give notice of "Tenant's intention to tender vacant possession" because it stated that Tenant was seeking to *sublet* the premises for the remainder of the Lease term.  That stated intention invalidates the notice because a subletting would have required Tenant to *remain* in legal possession. S.C.J. Realty Corp. v. Williams, 67 Misc.2d 904 (Civ. Ct. N.Y. Co. 1971) (tenant must have possessory interest in premises in order to invest subtenant with legalized possession).  In other words, Tenant could not commit to vacate and at the same time seek to enter into a sublease.

---

[5] "Polese Aff." refers to the Affirmation of Sam Polese in Support of Plaintiff's Motion for Partial Summary Judgment dated May 20, 2019.

Guarantor's counsel's *unsupported* statements that "Thor fully understood that [Tenant] had a good faith desire to help Thor find a replacement tenant" and that there is "nothing inconsistent" with Tenant's notifying Thor of its intent to tender vacant possession and "expressing a desire to find a replacement tenant" are false and do not change the fact that the notice failed to give unequivocal notice of Tenant's intention to surrender the premises. (Def. Mem. 10)

### B. Tenant Did Not "Tender" "Vacant Possession Of The Demised Premises To Landlord In The Condition Required Pursuant To The Terms Of The Lease"

Guarantor has not eliminated all fact issues on whether it satisfied the two sub-conditions in Section (i) of the Guaranty.[6]   There was no voluntary "tender" by Tenant, but a landlord re-entry after Tenant's default and resulting lease termination.  In addition, the premises were not "in the condition required pursuant to the terms of the Lease" because Tenant's Work was not completed.  (Pl. Mem. 16-17)

There can be no dispute that Tenant failed to "tender" possession, and Landlord regained possession only through a self-help re-entry.  Thus, the first sub-condition was clearly not satisfied.  As to the second sub-condition, Guarantor evasively argues that the premises complied with the Lease's "surrender provision," Section 21.5.  According to Guarantor, Tenant would have breached Section 21.5 if Tenant had turned over a "fully-functioning and built-out space" because the space would not be free of Tenant's Moveable Property. (Def. Mem. 5)  Plainly, the words "in the condition required pursuant to the terms of the Lease" are meant to incorporate all of the Lease terms concerning the "condition" of the premises, including Section 1.3(B), which required the premises to be built-out in accordance with Madison Avenue Standards.  Contrary to Guarantor's contention, Tenant's tender of the premises with Tenant's Work performed would

---

[6] Indeed, on plaintiff's motion, we show that plaintiff is entitled to judgment as a matter of law.

not constitute a breach of Section 21.5, because Tenant could (and was required to) remove all Moveable Property upon surrender.[7] (Ex. B (Lease) §6.1)

## C. Tenant Did Not Deliver The Keys To Landlord

Guarantor conceded that Tenant did not deliver the keys to Landlord.  That "symbolic act of relinquishing possession," would have established if, and when, Tenant tendered vacant possession.  (Pl. Mem. 18)   Incredibly, Guarantor disputes that Thor made the keys available, claiming that Thor refused to provide the keys to Tenant after issuance of the Notice of Default. But the evidence is directly to the contrary.  Critically, Guarantor's corporate representative -- whose testimony binds defendant[8] -- *admitted* at deposition that the keys "have always been available" for Tenant to pick up.  (Exh. O (Sebag Dep.) 136/18-137/11)  Thor's Notice of Delivery asked Tenant to contact Geoff Ross (Thor's Director of Development) to "coordinate delivery of the possession of the Premises" -- which obviously included picking up the keys. But Tenant did not contact Mr. Ross (or anyone else at Thor) to coordinate delivery of possession, or to obtain the keys. (Xenitelis Aff. [9]  ¶ 16; Exh. E (Notice of Delivery))

---

[7] Section 6.1 of the Lease provides that "all fixtures[,] equipment, improvements and installations attached to, or built into, the Premises" shall remain part of the Premises. Prior to the expiration or earlier termination of the Term, Tenant must remove all Moveable Property, defined as "moveable furniture, equipment, and any other items that are the property of Tenant and are affixed to the Premises, excluding shelving, and any of Tenant's trade fixtures and equipment that is affixed to the Premises so long as any damage to the Premises incurred by reason of such affixed Moveable Property or the removal thereof is repaired by Tenant." (Exh. B (Lease) §6.1)

[8] Reilly v. Natwest Markets Group Inc., 181 F.3d 253, 268 (2d Cir. 1999); Bigsby v. Barclays Capital Real Estate Inc., 329 F.R.D. 78, 80 (S.D.N.Y. 2019).

[9] "Xenitelis Aff." refers to the Affirmation of Justin A. Xenitelis in Support of Plaintiff's Motion for Partial Summary Judgment dated May 20, 2019.

Even assuming that defendant can now take a position opposite to that set forth in the testimony of its Rule 30(b)(6) witness, Guarantor merely offers a self-serving email from Mr. Dobashi to Mr. Polese -- after Tenant stopped paying rent -- which states in part that "I have not heard from you nor have we been given the keys for the 680 Madison property as discussed during our meeting." (Def. Mem. 7; Def. Exh.[10] 28, October 19, 2015 email)  Mr. Polese responded that "[t]he keys to the premises have always been available for pick up, and remain so. Please contact Geoff Ross . . . to make arrangements." (Def. Exh. 28, October 20, 2015 email) No effort was made by Tenant to pick up the keys, nor did Thor have a location to send them to, as the Tenant was based in Qatar and had no United States presence (Xenitelis Aff. ¶ 17)  So there can be no triable fact issue that the keys have always been available to Tenant, and Tenant prevented the key-return condition from being satisfied by failing to pick up the keys.  (Pl. Mem.18)

Guarantor attempts to skirt the key-return condition, arguing that delivery would be "entirely redundant" and that Thor insistence on the condition is "at best, hypertechnical." (Def. Mem. 7) But the key-return condition must be strictly satisfied, so these characterizations, and In re Mills' Est., 172 A.D. 530 (1st Dept.), aff'd, 219 N.Y. 642 (1916), cited by Guarantor (Def. Mem. 7), do not excuse Guarantor from literal satisfaction of the condition. [11]   Moreover, the key return condition is not about saving the cost of new keys or locks.  It has legal consequences as the "symbolic act of relinquishing possession," and would have had a real practical effect

---

[10] "Def. Exh." Refers to the exhibits to Defendant Qatar Luxury Group S.P.C.'s Undisputed Facts Pursuant to Local Rule 56.1.

[11] Mills did not involve the performance of a condition.

here, resolving the disputed issue of whether (and when) Tenant tendered vacant possession.  (Pl. Mem. 18)

Thus, Guarantor has failed to show that any of the conditions for terminating its liability were strictly satisfied.  And surely Guarantor has not shown compliance with every condition *as a matter of law.*  Thus, Guarantor's motion for partial summary judgment on Count II, declaring that Guarantor's liability under the Guaranty terminated as of July 8, 2017, should be denied.

## II.

### THOR IS ENTITLED TO RECOVER DAMAGES FOR TENANT'S FAILURE TO CONSTRUCT THE PREMISES

Guarantor's remarkable argument that Thor has no remedy for Tenant's failure to build out the Premises (Def. Mem. 11-15) -- an admitted breach of the Lease -- contradicts the Lease and well-established law.  One provision of the Lease specifically allows Landlord to invoke all available rights and remedies if Tenant fails to complete Tenant's Work, and another provision generally entitles Landlord to recover damages for any Tenant defaults.  And even without those provisions, Landlord could still recover damages for Tenant's breach of the Lease under New York common law.

 Dispositive is Section 1.7, which expressly entitles Landlord to invoke all "rights and remedies . . . at law" if Tenant failed to complete Tenant's Work.  Specifically, that section provides: "If after the Work Completion Date, Tenant has still failed to complete Tenant's Work and open the Premises to the public for business fully fixtured, stocked and staffed in accordance with Madison Avenue Standards, *then Landlord shall have the right, but not the obligation, to treat such failure as a default hereunder, giving rise to all of Landlord's rights and remedies*

*hereunder, at law and in equity."* (Emphasis added.)[12]   Accordingly, Guarantor's argument that

Landlord is limited to Sections 19.2 and 19.3 -- the damages provisions in the Lease addressing

loss of rent -- is not only illogical, but contrary to the parties' agreement in Section 1.7 that

Landlord could seek all legal rights and remedies.   Undoubtedly, damages are always

recoverable for breach of a contract.   Ez-Tixz, Inc. v. Hit-Tix, 969 F.Supp. 220, 225 (S.D.N.Y

1997) ("beyond cavil" in New York that a party's failure to perform its obligations under a

contract constitutes a breach and entitles the other party to damages); Nielsen Co. (U.S.), LLC v.

Success Sys., Inc., 112 F. Supp. 3d 83, 97 (S.D.N.Y. 2015) (same); McCaffrey v. Strainer, 81

A.D.2d 977, 978 (3d Dept. 1981) (defendant's liable for damages arising from its failure to

perform express promise to provide waterproof basement even if it was not a general contractor).

It is not surprising that Guarantor omits mention of Section 1.7 in its memorandum, despite

observing that the Lease "contains many provisions governing the parties' respective rights with

respect to the buildout"  and purporting to survey all of the Lease's relevant clauses. (Def. Mem.

14)

      Further, Section 19.4 -- titled "Other Remedies" -- also demonstrates that the parties

intended to allow Landlord to recover damages if Tenant failed to perform the required

construction.  Section 19.4 specifically states:

> Nothing contained herein shall be construed as limiting or precluding the
> recovery by Landlord against Tenant of *any other sums or damages to which, in*
> *addition to the damages particularly provided above, Landlord may lawfully be*

---

[12] Landlord was not required to serve a default notice based on Tenant's failure to build out the
store in order to recover damages for breach of that obligation.  Teachers Ins. and Annuity Ass'n
of Am. v. CRIIMI MAE Services ltd. Partn., 681 F. Supp. 2d 501, 510 (S.D.N.Y. 2010), aff'd,
481 Fed. Appx. 686 (2d Cir. 2012)(unpublished) (default notice not required to recover damages
for breach when contract mandated service of a default notice for termination of contract); IMG
Fragrance Brands, LLC v. Houbigant, Inc., 679 F.Supp.2d 395, 402-403 (S.D.N.Y 2009)
(same). In any event, the default was noticed  (Exh. K)

> *entitled by reason of any default hereunder on the part of Tenant."  (Emphasis added)*

Manifestly, Section 19.4 -- which Guarantor also neglects to address -- utterly defeats Guarantor's argument that the non-inclusion of a remedy in Sections 19.2 and 19.3 for the cost of the build out indicates that the parties intended to deprive Thor of damages for Tenant's failure to construct.

      QLG's contention that Sections 6.1 and 19.2 of the Lease confirm that the parties did not intend for damages to be recoverable for breach of QLG's buildout obligations is incorrect.  The issue of whether Thor has an "ownership interest" in improvements before they are completed is immaterial to the damages recoverable for breach of the construction obligations.   In addition, the availability of an offset for costs of "altering and preparing the Premises for new tenants" in one of the damages provisions in the Lease designed to address loss of rent (Section 19.2), which *might* compensate Thor for Tenant's failure to build-out (to the extent Thor had to perform work that same work for Tom Ford) should not preclude Thor from separately recovering (without duplication) damages for Tenant's breach of its build-out obligation.   The provable amount of damages, and avoidance of duplication, are trial issues.  For present purposes, it suffices to conclude that the breach is compensable in money damages.

      The sole case cited by QLG concerning build-out costs, the unpublished Granfeld II, LLC v. Kohl's Dept. Stores, 48 Misc.3d 1210(A), 2015 WL 4275244 (Sup. Ct. Suffolk Co. 2015), has no bearing here.  The lease in Granfeld did not include a provision (like Section 1.7 in the Lease) which specifically permitted landlord to invoke all rights and remedies at law in the event tenant breached its construction obligation.  Additionally, Section 19.4 of the Lease (entitling Landlord to recover "any sums or damages to which . . . Landlord may lawfully be entitled") is significantly broader than the provision in Granfield (entitling landlord to recover "any other

sum of money and damages *owed by* Tenant to Landlord"), which the <u>Granfeld</u> court construed as referring only to monetary payments other than rent.  By contrast, the Lease here does not limit remedies, but just the opposite: it makes clear that the remedies available are as broad as whatever the law allows.  In any event, <u>Granfeld</u> is not controlling authority and has not been cited. [13]

Clearly, Sections 1.7 and 19.4 the parties' intent that Landlord have available to it all of the rights and remedies available under law in the event tenant breached its covenant to build out the Premises to a luxury standard and open for business.  Although Guarantor argues that Thor's remedy is limited to Sections 19.2 or 19.3, that flies in the face of Sections 1.7 and 19.4, which make clear that no limitation is implied and all remedies available at law for the breach are available here.  Indeed, the damages suffered by Thor from tenant's abject failure to even start – let alone complete – construction is of a different nature from the harm it suffered from the loss of rent.  Surely there is no reading of the Lease that would limit, as a matter of law, Landlord's remedies to the loss-of-rent alternatives in Sections 19.2 and 19.3.

Since Thor is entitled to recover damages for Tenant's failure to build-out the premises in violation of the Lease, Guarantor's motion for summary judgment on Count I should be denied.

## III.

## THOR MAY ELECT AT TRIAL WHETHER TO SEEK DAMAGES UNDER SECTION 19.2 OR 19.3 OF THE LEASE

Guarantor's argument that the election of remedies doctrine and the Guaranty bar Thor from recovering damages under Section 19.3 of the Lease (Def. Mem. 15-18) is devoid of merit.

---

[13] A district court sitting in diversity must predict how the state's highest court would rule on an uncertain issue. <u>Travelers Ins. Co. v. Carpenter</u>, 411 F.3d 323, 328 (2d Cir. 2005). Aside from the foregoing, we suggest that <u>Granfeld</u> was wrongly decided and does not represent how the New York Court of Appeals would rule in that case.

That contention -- together with Guarantor's opposition to the reformation of the obvious typographical error in Section 19.2 -- is a specious attempt by QLG to insulate itself from *any* liability for Tenant's admitted defaults under the Lease.

Generally, under settled New York law, a party is not required to elect between inconsistent theories in its pleadings until a time during or after trial within the judge's discretion. Wilmoth v. Sandor, 259 A.D.2d 252, 254 (1st Dept. 1999); Baratta v. Kozlowski, 94 A.D.2d 454, 464 (2d Dept. 1983). See also TVT Records v. Island Def Jam Music Group, 250 F.Supp.2d 341, 348 (S.D.N.Y 2003) (election between equitable and monetary relief can occur after verdict); Vista Co. v. Columbia Pictures Industries, Inc., 725 F.Supp.1286 (S.D.N.Y 1989) ("clear" that election between rescission of contract and damages may take place after trial).

However, the election of remedies doctrine, when rarely applied, "prevents a party which has chosen to pursue one of two inconsistent legal theories from later asserting the second legal theory." Omega Executive Services, Inc. v. Grant, 1980 WL 1432 *1 (S.D.N.Y 1980). The purpose of the doctrine is "to prevent a party from obtaining duplicate relief for a single wrong and from gaining an unfair advantage over the opposing party which has acted in reliance upon the election." Omega Executive Services, 1980 WL 1432, at *1. See also Fletcher v. Rodriguez, 47 Misc.3d 582, 586 (Sup. Ct. Queens Co. 2015) ("courts will not permit suitors solemnly to affirm that a given state of facts exists from which they are entitled to a particular relief and afterward affirm that a contrary state of facts exists, from which they are entitled to inconsistent relief"). Election of remedies is a "harsh and arbitrary principle designed *only* to prevent vexatious litigation and should be applied *only* when there has clearly been an

irrevocable election." Prudential Oil Corp. v. Phillips Petroleum Co., 418 F.Supp. 254, 257 (S.D.N.Y 1975) (emphasis added).[14]  In essence, it is a species of estoppel.

To preclude an otherwise available remedy based on "election of remedies," a party must have chosen one of two (or more) *inconsistent* remedies, and in reliance upon that election, that party must also have gained an advantage, or the opposing party must have suffered some detriment.  Prudential Oil Corp., 418 F. Supp. at 257; Sofi Classic S.A. de C.V. v. Hurowitz, 444 F.Supp.2d 231, 238 (S.D.N.Y 2006) (quoting 331 East 14th St. v. 331 E. Corp., 293 A.D.2d 361 (1st Dept. 2002)); Fletcher, 47 Misc.3d at 586.  Remedies are inconsistent when they "proceed on opposite and irreconcilable theories, demands, or claims of rights, the test being whether the facts supporting one remedy are consistent with the facts supporting the other.  Simon v. Boyer, 51 A.D.2d 879, 880 (4th Dept. 1976), aff'd, 41 N.Y.2d 822 (1977); Fletcher, 47 Misc.3d at 585.

Importantly, election of remedies presupposes that the electing party have "complete knowledge of the facts" and a "clear understanding of the nature of the remedies between which the election is made."  Liston v. Hicks, 243 App. Div.159, 163 (3d Dept. 1935); Royal Hair Pin Corp. v. Rieser, 218 N.Y.S.2d 773, 776 (Sup. Ct. Kings Co., modified, 15 A.D.2d 539 (2d Dept. 1961).  Thus, the doctrine does not apply when a party lacked "full knowledge of the facts necessary to enable [it] to make an intelligent and deliberate choice."  Fletcher, 47 Misc.3d at 586.

Contrary to Guarantor's argument, (i) Thor was not required to elect between Section 19.2 and Section 19.3 when it drew on the Letter of Credit; (ii) Thor did not make any election when it drew on the Letter of Credit; and (ii) even if Thor made a contemporaneous election, it is

---

[14] Accordingly, the policy of New York courts is to "apply a liberal doctrine . . . rather than a narrow and harsh one in regard to the election of remedies."  Prudential, 418 F.Supp. at 257 (citation omitted).

free to change its damages remedy, there being no prejudice to Tenant or Guarantor from the manner of letter of credit drawdowns.[15]  Critically (and indisputably), the Lease says nothing about Thor having to elect between Section 19.2 and 19.3 when it drew on the Letter of Credit. Nor does Guarantor cite any precedent applying the doctrine to a party's pursuit of alternative (and essentially consistent) contractual damages remedies.  Clearly, the situation here is *not* one that the election of remedies doctrine aims to prevent: Thor will *not* obtain duplicate relief for the same wrong if it chooses (at trial) to recover damages pursuant to Section 19.3 because the amounts Thor received from the Letter of Credit for post-termination damages will be credited against the damages recoverable under Section 19.3.  And QLG does not claim that it did anything -- let alone detrimentally change position -- in reliance upon Thor's purported election of Section 19.2, or that Thor has somehow gained an unfair advantage over QLG.   In fact, it is QLG that is trying to achieve an unfair advantage, by claiming that Thor elected 19.2, and that because of the mistake therein, Thor essentially gets nothing.

Further, the requirements for application of the doctrine are not met here.  First, Section 19.3 is not inconsistent with Section19.2 because the same facts support both remedies, are they are essentially different ways of getting to the same results over time.  In addition, when Thor drew on the Letter of Credit, it lacked complete knowledge of the facts, and a clear understanding of how damages would be calculated under Section 19.2 and Section 19.3. Thus, Landlord made periodic draws in amounts not materially exceeding the accrued  rent, thereby keeping its options open until it could make an informed decision about which formulation

---

[15] As evidence of an election of remedies, aside from the letter of credit drawdowns, Guarantor points to an offhand estimate by Thor's Vice President of Leasing (Sam Polese), in the context of settlement negotiations, of the amount he believed could be recovered under Section 19.2 (Def. Mem. 16-17).  The notion that such a statement can constitute a binding and irrevocable election of remedies is absurd in light of the governing legal principles.

would be more advantageous.  (Xenitelis Opp.Aff., June 20, 2019, ¶¶ 2, 4-5)  In fact, Thor still cannot make an informed and deliberate choice between Section 19.2 and 19.3 until the Court determines whether damages under Section 19.2 include Fixed Rent (*i.e.*, whether the Lease will be reformed), and determines the fair and reasonable value of the Premises for purposes of Section 19.3. (Xenitelis Opp. Aff. ¶ 4)  Put simply, there has not been an election – much less an irrevocable one – and the "harsh" and "arbitrary" election of remedies doctrine need not be invoked to prevent vexatious litigation or double recovery.

Finally, the Guaranty does not support Guarantor's argument that Thor is precluded from recovering damages under Section 19.3.  Guarantor is relying on the sentence in Section 2 of the Guaranty which says that "On or before the expiration of the Final Obligation Date, Guarantor shall pay, or shall cause Tenant to pay, to Landlord all Fixed Rent, Additional Rent and all other charges and sums due and payable by Tenant under the Lease due and payable up to and including the Final Obligation Date (but specifically excluding any accelerated Fixed Rent, Additional Rent and all other charges and sums due and payable by Tenant under the Lease)." What this means is that if Guarantor satisfied the cut-off conditions, and a Final Obligation Date was thereby fixed, Guarantor's obligations did not include any accelerated rent for which Tenant might be liable in the interim.  But if the conditions were not satisfied, and thus no Final Obligation Date arose, then Guarantor's obligations remain identical to that of Tenant, including liability for damages under Section 19.3.

Thus, Thor should be allowed to choose to recover damages pursuant to Section 19.2 or 19.3 at trial, and Guarantor's motion for partial summary judgment on Count II limiting Thor to Section 19.2 should be denied.

**IV.**

**SECTION 19.2 OF THE LEASE SHOULD BE REFORMED
BECAUSE IT DOES NOT REFLECT EITHER PARTY'S INTENT**

There is clear and convincing evidence that the parties did not intend to measure Thor's damages only by the "Additional Rent" that would have been collected, and that the word "Additional" in Section 19.2 of the Lease was a typographical error that neither party caught before signing the Lease.  (Pl. Mem. 7-9, 19-23; Xenitelis Aff. ¶¶ 10-15; Ex. N (Schoenfeld Dep.)  46/5-14, 50/6-17, 52/19-53/4, 78/5-79/2, 123/23-124/5, 128/2-23) It remains undisputed that Landlord and Tenant never intended (or agreed) to limit Thor's damages to the recovery of "Additional Rent," and that both parties overlooked that Section 19.2 said so.[16] (Pl. Mem. 7-9; Xenitelis Aff. ¶ 12, 14-15; Ex. N (Schoenfeld Dep.) 46/5-14, 50/6-17, 52/19-53/4, 78/5-79/2) In fact, the experienced real estate attorneys involved in drafting the Lease had never encountered such a provision, and characterized it as "illogical," "nonsensical," and contrary to industry practice.[17] (Pl. Mem. 7 -9; Xenitelis Aff. ¶ 12; Ex. N (Schoenfeld Dep.) 47/12-14, 50/18-51/2, 83/10-21)

Instead of offering evidentiary proof of the parties' intent, Guarantor speculates (through counsel) that "it is probable – not just possible" that Thor "whether by virtue of its own

---

[16] Guarantor's statement that Section 19.2 "was not inconsistent with the terms of the LOI" (Def. Mem. 22) is disingenuous.  The LOI (Exh. A) was silent on the issue of damages.

[17] Guarantor's suggestion that the deposition question answered by Mr. Schoenfeld was a "tortured hypothetical" (Def. Mem. 24) is lame and simply an attempt to avoid his admission and the reality that Section 19.2 makes no sense as written.  Guarantor has no persuasive rationale for a mutual intent whereby Thor's damages would be on the relatively nominal Additional Rent, subtracting from that all of Tom Ford's rent.

negligence or a conscious business decision, offered both a standard, more tenant-favorable

along with a liquidated, more landlord-favorable damages provision" to Tenant, with Thor

retaining the right to elect which remedy to enforce, and that the parties agreed to that "deal.'"[18]

(Def. Mem. 20-21, 24)   But under Section 21.16, the submission and negotiation of the Lease

was not deemed an offer by Landlord.   More critically, Guarantor offers no supporting evidence

whatsoever for this alleged "probability," not even bothering to submit an affidavit from Eric

Schoenfeld.   (Mr. Schoenfeld did not testify about the "probable" purported offer, much less the

illusory agreement.)   The omission is not surprising.   Mr. Schoenfeld admittedly had no

recollection of reviewing Section 19.2 or considering how it would work when the Lease was

drafted.   Nor did he remember that the provision limited Thor's damages to "Additional Rent."

(Ex. N (Schoenfeld Dep.) 50/6-17)   Guarantor's counsel mistakenly posits, without any

supporting legal authority, that Thor's entry into leases with four other retail tenants (containing

the same typographical error) demonstrates that Thor had a "practice" of "offer[ing tenants] both

a standard, more tenant-favorable damages remedy provision along with a liquidated, more

landlord-favorable damages provision," with Thor retaining the right to elect which remedy to

enforce.   (Def. Mem. 20-21)   But it would make no sense for Thor to make such an "offer" if

Thor ultimately had the right to choose the remedy.   In any event, the Xenitelis Affirmation

defeats Guarantor's hypothesis, demonstrating that Thor never intended to make the unfavorable

"offer."   Mr. Xenitelis explains that the four leases contained the same error as the Lease because

they were also drafted using the same standard form that served as a template for the Lease

---

[18] Guarantor's characterization of Section 19.2 (as limited) as a "standard" provision contradicts
the statements by Mr. Schoenfeld and Mr. Xenitelis that they had never encountered such a
provision.   (Xenitelis Aff. ¶ 15; Exh. N (Schoenfeld dep.) 50/18-51/2)

(before Thor discovered the error in the Lease), and as was the case here, the error was not picked up by landlord or any of the tenants in the drafting process.[19]   (Xenitelis Aff. ¶ 21)

Guarantor also misstates the law in its attempt to avoid reformation of the Lease.  To start, Guarantor incorrectly contends that a party may not invoke mutual mistake to avoid the consequences of its own negligence, citing De Sole v. Knoedler Gallery, LLC, 974 F.Supp.2d 274, 320 (S.D.N.Y 2013).  (Def. Mem. 20) But De Sole did not involve a claim for reformation of a contract, and thus, is inapposite.[20]   In addition, the New York Court of Appeals has stated that reformation is available for *any* party's mistake in drafting an agreement, and courts have not hesitated to reform contracts at the request of the parties that made the drafting errors.  See Harris v. Uhlendorf, 24 N.Y.2d 463, 467-468 (1969) ("Where there is no mistake about the agreement and the only mistake alleged is in the reduction of that agreement to writing, such mistake of the scrivener, *or of either party*, no matter how it occurred, may be corrected"; granting reformation to party that  drafted deed embodying agreement parties had not made); U.S. Fid. & Guar. Co. v. Burress, 844 F. Supp. 1475, 1480–1481 (D. Kan. 1994); Wellman Sav. Bank v. Adams, 454 N.W.2d 852, 855 (Iowa 1990).  (Pl. Mem. 23).

Guarantor also argues that since the mistake originated in Thor's form it was unilateral, and thus, Thor must show that the mistake was "coupled with some fraud" to obtain reformation. (Def. Mem. 21)   First of all, in the Lease itself, the parties agreed that the Lease "shall be

---

[19] The lease with Tom Ford was entered into after Thor had discovered and corrected the error in its standard from lease, so the first damages formulation there dropped the word "Additional." (Xenitelis Aff. ¶ 22)

[20] In De Sole, plaintiff had purchased a painting based on the representation that it had been created by Willem de Kooning, and sought rescission based on unilateral mistake and mutual mistake, alleging that the seller knew or should have known the painting was not authentic but misrepresented it as such.  974 F.Supp.2d at 319-320.

construed as if both parties jointly prepared the agreement" (Lease § 21.19).   Given the many

drafts that circulated and extensive negotiation of the document, the final product, appropriately,

was deemed jointly prepared, and hence the mistake cannot be laid solely on Thor's doorstep.

Moreover, the issue of whether a mistake is unilateral or mutual does not turn on who prepared

the draft of an agreement.  (Pl. Mem. 20, 23) Rather, the question is whether the final agreement

fails to reflect both parties' intent (a mutual mistake) or just one party's intent (a unilateral

mistake).  Here, neither party actually intended that damages be calculated using the bizarre

formulation contained in Section 19.2, so the mistake is mutual.

Guarantor also misstates the requirements for reformation, citing  Wallace v. 600 Partners

Co., 86 N.Y.2d 543, 548 (1995), for the proposition that a lease may not be reformed based on a

scrivener's error "unless the court finds an ambiguity, and that ambiguity creates an

unenforceable and absurd result." (Def. Mem.  21-23) But Wallace (the only case cited for these

elements) *did not* decide or address the merits of a reformation claim.  It found that such relief

was time-barred by the statute of limitations.  Instead, the Wallace court considered how to  carry

out the parties' intention "as a matter of interpretation," using standard construction techniques,

including an analysis of whether there was an ambiguity which would lead to an unenforceable

or absurd result (and concluded that was not the case).  86 N.Y.2d at 547-548. Significantly,

however, the New York Court of Appeals has not required ambiguity, absurdity or

unenforceability for reformation, but simply proof that the contract does not reflect the parties'

intentions.  See e.g. Harris, 24 N.Y.2d at 467-468.

Like Wallace, the other authorities Guarantor cites for the "high bar" of proving absurdity

and Thor's failure to meet (inapplicable) requirements involved contract-interpretation issues and

did not consider reformation claims. (Def. Mem. 21-23) Thus, those cases are also inapposite.

21

Warberg Opportunitistic Trading Fund L.P. v. GeoResources, Inc., 112 A.D.3d 78 (1st Dept. 2013), interpreted warrants, finding that a "notwithstanding" provision did not lead to an absurd result by rendering another portion of the contract meaningless.[21] In Dandong Old-N.East Agric. & Animal Husbandry Co. v. Pasternak Baum & Co., 2018 WL 1399207 * 6-10 (S.D.N.Y 2018), the parties sought enforcement of a settlement agreement, offering "irreconcilable and untenable" constructions of a particular provision. The court refused to enforce the agreement, finding a lack of mutual assent as to its material terms. Granite Partners, L.P. v. Merrill Lynch, Pierce, Fenner & Smith, 2002 WL 31106406 (S.D.N.Y 2002) interpreted margin contracts, and the court stated, as a rule of construction, that a contract must be construed, if possible, to avoid an interpretation that will result in an absurdity, injustice or have an inequitable result.  2002 WL 31106406, at *7.

Finally, the issue in Holland Loader Co., LLC v. FLSmidth A/S, 313 F. Supp. 3d 447, 467 (S.D.N.Y. 2018), aff'd, 18-1643-CV, 2019 WL 1976096 (2d Cir. May 3, 2019), was whether extrinsic evidence of the parties' intent could be considered to determine the meaning of a contract. The court found the disputed provision unambiguous and thus did not consider extrinsic evidence to determine its meaning.[22]  But unlike the situation in Holland, parol evidence may

---

[21] Despite not finding an absurdity, the Warberg court denied a motion to dismiss plaintiff's reformation claim. 112 A.D.3d at 80.  So Warberg too cannot be read as requiring a party seeking reformation to prove absurdity.

[22] The other cases cited by Guarantor concerning the standard for finding "ambiguity" and "absurdity" in contracts (Def. Mem. 22) also involved contract interpretation and parol evidence issues, not reformation claims.   See Reiss v. Fin. Performance Corp., 97 N.Y.2d 195, 199 (2001) (contract interpretation); Meyer v. Stout, 79 A.D.3d 1666, 1668 (4th Dept. 2010) (carrying out deed's intention by rejecting words to make meaning more clear); In re Carvel Found., 8 Misc.3d 1025(A) (Surr. Ct. West. Co. 2002) (admitting parol evidence to ascertain parties' intent; court may carry out parties' intent by transposing, rejecting or supplying words to make meaning of contract clear).

always be considered by a court in connection with a reformation claim to determine whether a written agreement accurately reflects the parties' intentions.  See e.g. 313-315 West 125th St. LLC v. Arch Specialty Insur. Co., 138 A.D.3d 601, 602 (1st Dept. 2016).

In sum, the undisputed evidence clearly and convincingly establishes that Section 19.2 does not reflect the parties' intentions, warranting reformation of the Lease.  Thus, Guarantor's motion for summary judgment on Count III should be denied.

## **CONCLUSION**

For the foregoing reasons, Thor respectfully requests that QLG's motion for partial

summary judgment be denied in its entirety.

Dated:  June 20, 2019

MATALON PLLC

By:  */s/ Joseph Lee Matalon*
        Joseph Lee Matalon
450 Seventh Avenue, 33rd Floor
New York, New York 10123
(212)244-9000
nycourts@trial-lawyer.org
 *Attorneys for Plaintiff*

Of Counsel:
    Barbara R. Shweky