**MATALON PLLC**
450 Seventh Avenue, 33rd Floor
New York, New York 10123
Tel: (212) 244-9000
Email: nycourts@trial-lawyer.org
  *Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X
                                                        :
**THOR 680 MADISON AVE LLC,**                           :
                                                        :     **17-cv-08528 (PGG)(JLC)**
            **Plaintiff,**                              :
                                                        :
      -against-                                         :
                                                        :
**QATAR LUXURY GROUP S.P.C., and**                      :
**QATAR FOUNDATION FOR**                                :
**EDUCATION, SCIENCE AND**                              :
**COMMUNITY DEVELOPMENT,**                              :
                                                        :
            **Defendants**.                             :
-----------------------------------------------------------------X


**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER**
**SUPPORT  OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**



July 2, 2019

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ....................................................................................................................... 2

    I.    GUARANTOR FAILED TO STRICTLY SATISFY THE
THE CONDITIONS TO LIMIT LIABILITY, AND THUS ITS
OBLIGATIONS ARE COEXTENSIVE WITH TENANT'S ................................ 2

        A.  Tenant Did Not "Provide Landlord With Not Less Than Two (2) Years'
Prior Written Notice . . . Of Tenant's Intention To Tender Vacant
Possession Of The Demised Premises To Landlord ........................................ 3

        B.  Tenant Did Not "Tender" "Vacant Possession Of
The Demised Premises To Landlord In The
Condition Required Pursuant To The Terms Of The Lease" ........................ 4

        C.  Tenant Did Not Deliver The Keys To Landlord ............................................. 6

    II.   SECTION 19.2 OF THE LEASE SHOULD BE REFORMED
BECAUSE IT DOES NOT REFLECT EITHER PARTY'S INTENT .................... 8

    III.  THOR IS ENTITLED TO RECOVER DAMAGES FOR
TENANT'S FAILURE TO BUILD-OUT THE PREMISES ................................. 13

    IV.  THOR IS ENTITLED TO RECOVER ITS ATTORNEYS' FEES ....................... 14

CONCLUSION ................................................................................................................. 14

**TABLE OF AUTHORITIES**

PAGE(S)

**CASES**

14th St. Owner LLC v. Westside Donut 6th Ave. Ventures LLC,
   2019 WL 1044195 (Sup. Ct. N.Y. Co. 2019) ..................................................................6

Bigsby v. Barclays Capital Real Estate Inc.,
   329 F.R.D. 78 (S.D.N.Y. 2019)......................................................................................7

Caring Habits, Inc. v. Fund for the Public Interest, Inc.,
   2014 WL 7146041 (S.D.N.Y 2014) ...............................................................................3

De Sole v. Knoedler Gallery, LLC,
   974 F.Supp.2d 274 (S.D.N.Y 2013) ...............................................................................9

Flamingo LLC v. Wendy's Old Fashion Hamburgers of New York, Inc.,
   2013 WL 416050 (S.D.N.Y 2013) .................................................................................5

Harris v. Uhlendorf,
   24 N.Y.2d 463 (1969).....................................................................................................9

Hodgkiss v. Dayton-Brower Co.,
   93 Misc. 109 (App. Term, 2d Dept. 1915).....................................................................5

Hovorka v. Ingram,
   2009 N.Y. Misc. LEXIS 2538 (City Ct. Jefferson Co. June 23, 2009) .........................5

In re Mills',
   Est., 172 App. Div.. 530 (1st Dept.), aff'd, 219 N.Y. 642 (1916) .................................6

Integrity Ins. Co. v. Marine Midland Bank-Western,
   90 Misc.2d 868 (Sup. Ct. Monroe Co. 1977)..............................................................6, 7

Jersey Interstate Wire & Strip Corp. v. Metropolitan Life,
   41 Misc.2d 967 (Sup. Ct. Kings Co. 1964)..................................................................12

Loewenson v. London Market Cos.,
   351 F.3d 58 (2d Cir. 2003)............................................................................................11

Metropolitan Life Ins. Co. v. Oseas,
   261 App. Div. 768 (1st Dept. 1942), aff'd, 289 N.Y. 731 (1942)................... 9, 11, 12

Miller v. Boyanski,
    25 Misc.3d 1228 (City Ct. Watertown 2009)..................................................................6

Reilly v. Natwest Markets Group Inc.,
    181 F.3d 253 (2d Cir. 1999)...........................................................................................7

S. Ferry Bldg. Co. v. 44 Wall St. Fund, Inc.,
    142 Misc.2d 54 (Civ. Ct. N.Y. Co. 1988)..................................................................6, 7

Torres v. Livorno Restaurant Corp.,
    221 A.D.2d 197 (1st Dept. 1995)................................................................................10

U.S. Fid. & Guar. Co. v. Burress,
    844 F. Supp. 1475 (D. Kan. 1994)................................................................................9

Wellman Sav. Bank v. Adams,
    454 N.W.2d 852 (Iowa 1990) .......................................................................................9

## **RULES**

Fed. R. Civ. P. 30(b)(6).............................................................................................................7

**PRELIMINARY STATEMENT**

Guarantor grossly mischaracterizes Thor's amendments of the complaint to create the false impression that Thor has repeatedly changed its theories after realizing that damages previously sought are not recoverable. (Def. Mem.[1] 2-3) The reality is that Thor has amended out of an abundance of caution in response to various positions taken by defendant during the litigation, such as its claim that Thor made an irrevocable election of remedies and that there was no mistake in Section 19.2. If anything, Guarantor is in a glass house throwing the stones. Guarantor has repeatedly shifted its position as to when tenant tendered vacant possession, ranging from May 19, 2015 (per its former attorneys, White and Case), July 8, 2015 (testimony of corporate representative), and now December 23, 2015 ("constructive surrender" argument). At bottom, it is clear that none of the conditions precedent to a liability cut-off were satisfied, and that Guarantor remains fully liable for all of Tenant's breaches.

As to the mistake in Section 19.2, the evidence is undisputed that the section contains an actual mistake. Defendant's argument that Thor should be disqualified from relief because of its own negligence misstates the law; negligence (or lack thereof) is not an element for reformation. Similarly, defendant's argument that unless there was actual negotiation and express agreement on a clause, a mistake therein cannot be rectified, overlooks that even an implied agreement can contain a mistake which may be reformed. Here, the parties contracted against the backdrop of standard industry practice (the substance of which is not disputed), and there is no evidence that *either* party intended to deviate from the standard and adopt the weird limitation on damages

---

[1] "Def. Mem." refers to the Memorandum of Law in Opposition to Plaintiff Thor 680 Madison LLC's Motion For Partial Summary Judgment.

literally contained in Section 19.2. Accordingly, there is a mutual mistake which may be fixed by the court.

Defendant's contention that no damages may be recovered for the admitted breach of the build out obligation deserves short shrift, as it overlooks that Section 1.7 specifically states that all remedies under law are available for such breach, which obviously includes money damages.

Finally, there is no dispute that if Thor prevails here, it is entitled to recover attorneys' fees.

For the following and previously-stated reasons, Thor's summary judgment motion should be entirely granted.

## ARGUMENT

### I.

### GUARANTOR FAILED TO STRICTLY SATISFY THE CONDITIONS TO LIMIT LIABILITY, AND THUS ITS OBLIGATIONS ARE COEXTENSIVE WITH TENANT'S

Thor's moving papers demonstrated that Tenant failed to satisfy *any* of the Guaranty's conditions for the avoidance of full liability under the Lease. (Pl. Mem.[2] 13-19) Critically, there is no dispute that under New York law, literal compliance with express conditions is required; substantial performance will not suffice. Yet Guarantor invokes various legal doctrines in an effort to obscure that there was not compliance with the conditions as written. Thus, Guarantor contends that the defective Notice of Intent was valid under the "erroneous date rule." Defendant also argues that a "surrender by operation of law" occurred, as opposed to the required "tender" of vacant possession. Guarantor further asserts that the keys were "constructively" delivered.

---

[2] "Pl. Mem." refers to Plaintiff's Memorandum of Law in Support of its Motion for Partial Summary Judgment dated May 20, 2019.

But even if these characterizations are correct (they're not), these legal doctrines are no substitutes for strict satisfaction of the express conditions. Thus, partial summary judgment should be granted to Thor as to Guarantor's continuing liability for the breaches of lease as alleged in Counts I and II.

A.  **Tenant Did Not "Provide Landlord With Not Less Than Two (2) Years' Prior Written Notice . . . Of Tenant's Intention To Tender Vacant Possession Of The Demised Premises To Landlord**"

Guarantor admits that the Notice of Intent was defective on its face for fixing a backdated surrender date *less* than two years after the notice. Attempting to validate the notice, Guarantor now contends that a party terminating an agreement by prior written notice need only provide the notice in writing, prior to termination, and invoke the party's termination right in the notice, citing Caring Habits, Inc. v. Fund for the Public Interest, Inc., 2014 WL 7146041 (S.D.N.Y 2014) for that proposition. (Def. Mem. 5) But as explained in Thor's opposition brief (Thor Opp. Mem. 4), Caring Habits does not apply and does not excuse Guarantor from strict compliance with the *two-years'* advance notice condition in the Guaranty.

Guarantor also contends that its Notice of Intent (initially claimed to have retroactive effect) should be construed to state a surrender date two years after its date, under the "erroneous date rule."[3] As explained more fully in Thor's opposition brief, however, the erroneous date rule applies only to termination notices, nor can it be used to rewrite a notice which said that possession would be tendered in *less than* two years to instead say that possession would be delivered *at least* two years later (Thor Opp. Mem. 4-5).

---

[3] Tellingly, Guarantor did not invoke the erroneous date rule when Landlord contemporaneously rejected the Notice of Intent for not providing the required two years' notice.

3

Guarantor also tries to sidestep the two-years'-advance notice condition, nonsensically arguing that the Guaranty "contained no temporal limitation on [Tenant] actually tendering vacant possession," (Def. Mem. 7)  In Guarantor's view, it could have tendered vacant possession the very next day after the notice -- depriving Landlord of the lead time to find a replacement tenant and defeating its goal of minimizing "dark" periods.  Plainly, even if the admittedly "erroneous" notice can be saved by the erroneous-date rule, Tenant was required to give at least two years' advance notice of the time Landlord could expect to regain possession. Landlord's repossession a mere five months later, set in motion by Tenant's rent default, cannot be deemed compliance with the two-year-advance-notice requirement, no matter how Guarantor tries to twist the facts and the law. [4]

Finally, Guarantor's argument that Thor is seeking to add a "new, unbargained for termination requirement" that Rent and Additional Rent be paid during the two-year notice period, is flat wrong. (Def. Mem. 7-9)  Clearly, monetary compliance with the Lease during the two-year notice period is not an additional condition, but simply a consequence of Tenant's required compliance with the express condition that possession be "tendered" by Tenant (and not retaken by Landlord for default).

B.  **Tenant Did Not "Tender" "Vacant Possession Of The Demised Premises To Landlord In The Condition Required Pursuant To The Terms Of The Lease"**

Guarantor does not (and cannot) raise a triable issue of fact concerning Tenant's failure to perform the two sub-conditions of the tendering-vacant-possession condition.  First, there was no voluntary "tender" by Tenant, but a re-entry by Landlord using self-help (as allowed by Section

---

[4] Guarantor does not dispute that the absence of an operating store in Thor's building for more than 19 months (before Tom Ford opened for business) damaged Landlord. (Polese Aff. ¶ 5)

19.1).[5]  Second, the Premises were not "in the condition required pursuant to the terms of the Lease" because Tenant's Work was not completed.  (Pl. Mem. 16-17)

Guarantor admits that Tenant did not make an actual "tender," and then goes off on a tangent, contending that Tenant *surrendered* the premises *"by operation of law"* as of the termination date specified in Landlord's notice by giving up "dominion and control" of the premises. (Def. Mem. 10-11) Defendant makes the nonsensical argument that one sentence in the notice, which contemplated a voluntary surrender of the Premises on or prior to the specified termination date, as required by the Lease ("Tenant shall remain liable for damages as provided in the Lease or pursuant to law and the consequences of surrendering possession in its then condition"), somehow constituted an acknowledgment or acceptance of Tenant's "surrender" which occurred *after* the notice.[6]  (Def. Mem. 9) But any "surrender by operation of law" would be meaningless under the Guaranty because the Guaranty required that Tenant "shall have . . . *tendered vacant possession*," and that condition must be literally satisfied.  Guarantor's cases (Def. Mem. 10-11) did not deal with the performance of conditions and thus do not excuse Tenant from actually tendering vacant possession.  The cases are also distinguishable as none of them involved the termination of a lease based on a tenant's default.[7]

---

[5] The re-entry was "forcible" in the sense that it was involuntary against Tenant, there having been no tender of possession by Tenant.

[6] Clearly, the sentence in the parenthetical was simply a reservation of Landlord's right to recover damages for Tenant's breaches of the Lease.

[7] Guarantor's cases (Def. Mem. 10-11) denied claims by landlords for rent and a security deposit, not post-termination damages under a lease.  See Flamingo LLC v. Wendy's Old Fashion Hamburgers of New York, Inc., 2013 WL 416050 (S.D.N.Y 2013) (tenant entered into lease-termination agreement with prospective purchaser; landlord not entitled to back rent); Hodgkiss v. Dayton-Brower Co., 93 Misc. 109 (App. Term, 2d Dept. 1915) (no recovery of rent); Hovorka v. Ingram, 2009 N.Y. Misc. LEXIS 2538 (City Ct. Jefferson Co. June 23, 2009) (tenant relieved from liability for future rent when parties had "understanding" that tenant would vacate before lease expired; landlord offered to assist tenant to find new location and helped tenant depart);

5

Guarantor also does not raise an issue of fact that the Premises were not "in the condition required pursuant to the terms of the Lease" at the time of the alleged surrender. (There is no dispute that Tenant's Work was not completed.) Guarantor evasively argues that the Premises complied with the Lease's "surrender provision" (Section 21.5), ignoring Section 1.3(B), which required the Premises to be built out in accordance with Madison Avenue Standards. Plainly, the words "in the condition required pursuant to the terms of the Lease" incorporate all of the terms of the Lease that concern the "condition" of the Premises, including Section 1.3(B). Thus, the surrender provision did not eviscerate Tenant's obligation to construct the Premises. Rather, the parties contemplated that Tenant's Work would have been performed by the time the lease term ended, so Section 21.5 did not expressly mention Tenant's Work.

C. **Tenant Did Not Deliver The Keys To Landlord**

Guarantor concedes that Tenant did not deliver the keys to Landlord but attempts to skirt the key-return condition, arguing that it is "irrelevant, as the keys were constructively delivered at the moment of termination." (Def. Mem. 15) But the Guaranty expressly requires actual delivery, so constructive delivery (if it occurred) is insufficient.[8] Guarantor's cases, In re Mills' Est., 172 App. Div.. 530 (1st Dept.), aff'd, 219 N.Y. 642 (1916), Integrity Ins. Co. v. Marine Midland Bank-Western, 90 Misc.2d 868 (Sup. Ct. Monroe Co. 1977), and S. Ferry Bldg. Co. v. 44 Wall St. Fund, Inc., 142 Misc.2d 54 (Civ. Ct. N.Y. Co. 1988) (Def. Mem. 15-16), did not involve the performance of a condition and thus do not excuse Guarantor from literal satisfaction

---

Miller v. Boyanski, 25 Misc.3d 1228 (City Ct. Watertown 2009) (landlord agreed to tenant's early- termination request; landlord not entitled to retain security deposit). Finally, in 14th St. Owner LLC v. Westside Donut 6th Ave. Ventures LLC, 2019 WL 1044195 (Sup. Ct. N.Y. Co. 2019), cited by Guarantor, the tenant vacated the premises without the landlord's consent in contravention of the lease, so the court did not find a surrender by operation of law.

[8] The words "constructive delivery" do not appear in the Guaranty.

6

of the key-return condition. [9]   Moreover, as we have previously noted, the key-return condition is not about saving the cost of new keys or locks. It has legal consequences as the "symbolic act of relinquishing possession," and would have had a real practical effect here, resolving the disputed issue of whether (and when) Tenant tendered vacant possession. (Pl. Mem. 18)

Incredibly, Guarantor disputes Thor's showing that Landlord made the keys available (Xenitelis Aff. ¶16; Exh. E), claiming that Thor refused to provide the keys to Tenant after issuance of the Notice of Default. (Def. Mem. 15) But the evidence is directly to the contrary. Critically, Guarantor's corporate representative -- whose testimony binds defendant[10] -- *admitted* at deposition that the keys "have always been available" for Tenant to pick up. (Exh. O (Sebag Dep.) 136/18-137/11)[11] So there can be no triable fact issue that the keys have always been available to Tenant, and Tenant prevented the key-return condition from being satisfied by failing to pick up the keys. (Pl. Mem.18)

---

[9] In Integrity, unlike here, the tenant had tendered a formal surrender of the premises, returning all but one set of the keys. The retention of that one set was not deemed a retention of possession because the tenant had given notice to landlord before using the keys, confirming that it had divested itself of all possessory rights, including constructive possession. 142 Misc.2d at 58.

[10] Reilly v. Natwest Markets Group Inc., 181 F.3d 253, 268 (2d Cir. 1999); Bigsby v. Barclays Capital Real Estate Inc., 329 F.R.D. 78, 80 (S.D.N.Y. 2019).

[11] Even assuming that defendant can now take a position opposite to that set forth in the testimony of its Rule 30(b)(6) witness, Guarantor merely offers a self-serving email from Mr. Dobashi to Mr. Polese -- after Tenant stopped paying rent -- which states in part that "I have not heard from you nor have we been given the keys for the 680 Madison property as discussed during our meeting." (Def. Exh. 28, October 19, 2015 email) Mr. Polese responded that "[t]he keys to the premises have always been available for pick up, and remain so. Please contact Geoff Ross . . . to make arrangements." (Def. Exh. 28, October 20, 2015 email) No effort was made by Tenant to pick up the keys, nor did Thor have a location to send them to, as the Tenant was based in Qatar and had no United States presence (Xenitelis Aff. ¶ 17)

Guarantor has failed to raise any issue of fact concerning Tenant's failure to strictly satisfy the conditions for terminating Guarantor's liability. Thus, Thor's motion for partial summary judgment as to Guarantor's continuing liability for the breaches of lease alleged in Counts I and II should be granted. Indeed, even if the court finds an issue of fact as to one of the conditions or sub-conditions, Thor would still be entitled to summary judgment because all of the conditions must be satisfied.

## II.

### SECTION 19.2 OF THE LEASE SHOULD BE REFORMED BECAUSE IT DOES NOT REFLECT EITHER PARTY'S INTENT

It should not escape notice that defendant submits *no evidence* that it actually intended to limit damages under Section 19.2 to the "Additional Rent" that would have been collected had there been no termination. As a *factual* matter, the evidence is clear, convincing and undisputed that Section 19.2 contains a mistake. Similarly, there is no dispute that *both* parties were unaware of the mistake upon execution of the Lease.[12] Finally, the record on this motion is undisputed that standard practice in the real estate industry is to measure damages by all rent, not merely additional rent.[13] Accordingly, this motion simply presents the issue of whether, as a

---

[12] See Pl. Mem. 7-9, 19-23; Xenitelis Aff. ¶¶ 10-15; Ex. N (Schoenfeld Dep.) 46/5-14, 50/6-17, 52/19-53/4, 78/5-79/2, 123/23-124/5, 128/2-23.

[13] See Pl. Mem. 7 -9; Xenitelis Aff. ¶ 12; Ex. N (Schoenfeld Dep.) 47/12-14, 50/18-51/2, 83/10-21. Guarantor's argument that Mr. Schoenfeld's testimony that Section 19.2 is illogical should be ignored on the ground that it came in response to a "hypothetical" question (Def. Mem. 19 n.7), is lame and simply an attempt to avoid his admission and the reality that Section 19.2 makes no sense as written. Guarantor offers no persuasive rationale for a mutual intent whereby Thor's damages would be based on the relatively nominal Additional Rent, subtracting from that all of Tom Ford's rent. Also, contrary to Guarantor's contention (Def. Mem. 10 n.6), Thor's repetition of the typographical error in *four* other leases (as a result of its repeated use of the same standard form that served as a template for the Lease) does not undermine Mr. Xenitelis' *undisputed* statement that the standard-*industry* formulation in commercial real estate leases includes fixed rent payable under such leases, and is never limited to other additional items of rent. (Xenitelis Aff. ¶¶ 12, 21)

legal matter, the court has power to reform the Lease in these circumstances. That question should be answered affirmatively.

A repeated theme in defendant's papers is that Thor was negligent, and should thereby be disqualified from relief. But almost by definition some negligence is present whenever an agreement contains mistaken terms. Negligence (or lack thereof) is simply not a consideration, notwithstanding Guarantor's citation to De Sole v. Knoedler Gallery, LLC, 974 F.Supp.2d 274, 320 (S.D.N.Y 2013). (Def. Mem. 17)  De Sole did not involve a claim for reformation of a contract and is inapposite.[14] In addition, the New York Court of Appeals has stated that reformation is available for *any* party's mistake in drafting an agreement, and courts have not hesitated to reform contracts at the request of the party that made the drafting error, without so much as even mentioning negligence. See Harris v. Uhlendorf, 24 N.Y.2d 463, 467-468 (1969) ("Where there is no mistake about the agreement and the only mistake alleged is in the reduction of that agreement to writing, such mistake of the scrivener, *or of either party*, no matter how it occurred, may be corrected"; granting reformation to party that drafted deed embodying agreement parties had not made); Metropolitan Life Ins. Co. v. Oseas, 261 App. Div. 768 (1st Dept. 1942), aff'd, 289 N.Y. 731 (1942) (granting reformation to insurer that issued policy which contained incorrect figures for paid-up value); U.S. Fid. & Guar. Co. v. Burress, 844 F. Supp. 1475, 1480–1481 (D. Kan. 1994); Wellman Sav. Bank v. Adams, 454 N.W.2d 852, 855 (Iowa 1990).

---

[14] In De Sole, plaintiff had purchased a painting based on the representation that it had been created by Willem de Kooning, and sought rescission based on unilateral mistake and mutual mistake, alleging that the seller knew or should have known the painting was not authentic but misrepresented it as such. 974 F.Supp.2d at 319-320.

Guarantor also argues that since the mistake originated in Thor's form it was unilateral, and that reformation is not available given Mr. Xenitelis' admission that the mistake was not the result of any fraudulent act on Tenant's part. (Def. Mem. 17) First of all, in the Lease itself, the parties agreed that the Lease "shall be construed as if both parties jointly prepared the agreement" (Lease § 21.19). Given the many drafts that circulated and extensive negotiation of the document, the final product, appropriately, was deemed jointly prepared, and hence the mistake cannot be deemed solely Thor's fault. Moreover, the issue of whether a mistake is unilateral or mutual does not turn on who prepared the draft of an agreement. (Pl. Mem. 20, 23) Rather, the question is whether the final agreement fails to reflect both parties' intent (a mutual mistake) or just one party's intent (a unilateral mistake). Here, it is undisputed that neither party actually intended that damages be calculated using the bizarre formulation contained in Section 19.2, so the mistake is mutual.

Faced with the undisputed evidence that the parties never intended to limit Thor's damages to Additional Rent, Guarantor contends that reformation is not available because Thor cannot show "exactly what was really agreed upon." (Def. Mem. 17) But proof of an express agreement is not required; an implied agreement based on what is usual and customary is sufficient. Torres v. Livorno Restaurant Corp., 221 A.D.2d 197 (1st Dept. 1995) (affirming reformation of settlement stipulation because it contradicted universal understanding of a "high-low" agreement, and was therefore the product of a mutual mistake). Unquestionably, the parties did not negotiate the damages methodologies, and entered into the Lease against the backdrop of industry standards and practices. Clearly, Section 19.2 was the result of the parties' attempt to incorporate a standard damage formulation in the Lease. The obvious typographical error caused the provision to depart from industry practice, frustrating the parties' intent. Since there is no

contrary evidence, the parties should be deemed to have impliedly agreed to the standard damages formulation, and the deviation from industry standard considered a mutual mistake. [15] Notably, Guarantor does not introduce evidence of a contrary agreement or intent, or any rationale for the departure from industry standard. Thus, Section 19.2 is the result of a mutual mistake and reformation is warranted.

The Lease here, like any complex commercial agreement, contained a series of so-called "boilerplate" provisions aside from the damages clause. See, e.g., Section 21.2 (titled "Entire Agreement"), Section 21.3 ("No Waiver"), Section 21.4 ("Oral Modification"), Section 21.6 ("Severability") and Section 21.9 ("Successors and Assigns"). Such clauses are not typically the subject of negotiation, but are susceptible to mistakes, like any other portion of the agreement. Reduced to its essentials, defendant's argument is that unless there is actual negotiation over a specific provision, including boilerplate clauses, such provisions can never be reformed. That makes no sense. So long as there is evidence that neither party intended the clause as written (as there is here), and a means for determining what was actually intended (as there is here, by reference to industry standard), reformation is appropriate.

Guarantor's argument that there must be an express agreement before a mistake may be rectified (Def.Mem. 17)[16] is further defeated by Metropolitan Life Ins. Co. v. Oseas, 261 App.

---

[15] Tenant's attorney's testimony that one of his objectives was to secure the most favorable terms possible for his client (QLG Ex. B (Schoenfeld Dep.) 113/4-10) is not probative of the parties' intentions or agreement regarding Section 19.2. Mr. Schoenfeld did not testify that he noticed that Section 19.2 limited Landlord's damages to Additional Rent, that he took Thor "up on its offer" (Def. Mem. 18), or that he intended to obtain that damages formulation for his client. Nor has defendant offered an affidavit from Mr. Schoenfeld on these motions.

[16] In Loewenson v. London Market Cos., 351 F.3d 58, 61 (2d Cir. 2003), cited by Guarantor for the proposition that a party seeking reformation must show "exactly what was really agreed upon between the parties" (Def. Mem. 17), the parties had actually agreed on the term that the underwriter sought to reform.

Div. 768 (1st Dept.), aff'd, 289 N.Y. 731 (1942). There, an insurance company sought reformation of a life insurance policy which incorrectly stated its "paid-up value." The insured, like Guarantor, argued that the alleged mistake was not a scrivener's error because there was no prior agreement on "paid-up value." But the Appellate Division disagreed, finding that the parties had intended that the policy incorporate the "usual provisions." 261 App. Div. at 770. Critically, the court specifically held that there was an "implied agreement" which the scrivener failed to properly record, and granted reformation. The New York Court of Appeals unanimously affirmed. Here, there were no negotiations about damages methodologies, so the parties impliedly agreed to the standard damages formulation. Since that agreement is improperly reflected in Section 19.2, reformation is also warranted here. See also Jersey Interstate Wire & Strip Corp. v. Metropolitan Life, 41 Misc.2d 967 (Sup. Ct. Kings Co. 1964) (reformation of insurance policy to reflect true cash surrender value in accordance with industry schedule; Metropolitan Life permits reformation for obvious mistake to prevent an unconscionable advantage).

Finally, Guarantor cannot reconcile the inconsistency between Section 19.2 and 19.3. (Pl. Mem. 21-22), which supports the conclusion that Section 19.2 was the product of mutual mistake. As explained in Thor's opposition brief, Guarantor misconstrues the language of the Guaranty to argue that the Guarantor can never be liable under Section 19.3. However, given that no Final Obligation Date was fixed, Guarantor is indeed liable to the same extent as Tenant, including under Section 19.3. (Thor Opp. Mem. 17)

In sum, Guarantor has not offered any evidence that either of the parties intended to depart from industry standard and limit Thor's damages to Additional Rent, so the undisputed evidence clearly and convincingly establishes that Section 19.2 does not reflect the parties'

12

intentions, warranting reformation of the Lease. Thus, Thor's motion for summary judgment on Count III should be granted.

**III.**

**THOR IS ENTITLED TO RECOVER DAMAGES
FOR TENANT'S FAILURE TO BUILD-OUT THE PREMISES**

Guarantor's remarkable argument that Thor has no remedy for Tenant's failure to construct the Premises -- an admitted breach of the Lease -- completely ignores Section 1.7, which expressly entitles Landlord to invoke all "rights and remedies . . . at law" if Tenant failed to complete Tenant's Work. Specifically, that section provides: "If after the Work Completion Date, Tenant has still failed to complete Tenant's Work and open the Premises to the public for business fully fixtured, stocked and staffed in accordance with Madison Avenue Standards, *then Landlord shall have the right, but not the obligation, to treat such failure as a default hereunder, giving rise to all of Landlord's rights and remedies hereunder, at law and in equity.*" (Emphasis added.) Accordingly, Guarantor's argument that Landlord is limited to Sections 19.2 and 19.3 -- the damages provisions in the Lease addressing loss of rent -- is not only illogical, but contrary to the parties' agreement in Section 1.7 that Landlord could seek all legal rights and remedies.

Guarantor's argument in opposition to Thor's summary judgment motion on Count I is identical to its argument on its own motion for summary judgment to dismiss Count I. Accordingly, in an effort to avoid burdening the court with repetition, in reply here Thor incorporates its prior response. (Thor Opp. Mem. 10-13)

## IV.

## **THOR IS ENTITLED TO RECOVER ITS ATTORNEYS' FEES**

Guarantor does not dispute that if Thor prevails, the Guaranty requires it to reimburse Thor for the attorneys' fees and disbursements Landlord has incurred in this litigation. (Guaranty §4, Pl. Mem. 24-25) Thus, a determination should be made that Thor is entitled to recover such attorneys' fees and disbursements, in an amount to be determined.

## **CONCLUSION**

For the foregoing reasons, Thor respectfully requests that its motion for partial summary judgment be granted in its entirety.

Dated: July 2, 2019

MATALON PLLC

By: */s/ Joseph Lee Matalon*
     Joseph Lee Matalon
450 Seventh Avenue, 33rd Floor
New York, New York 10123
(212)244-9000
nycourts@trial-lawyer.org
  *Attorneys for Plaintiff*

Of Counsel:

Barbara R. Shweky