**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

THOR 680 MADISON AVE LLC,                          :
                                                   : Case No.: 1:17-cv-08528 (PGG) (JLC)
                        Plaintiff,                 :
        v.                                         : **DEFENDANT QATAR LUXURY**
                                                   : **GROUP S.P.C.'S REPLY IN SUPPORT**
QATAR LUXURY GROUP S.P.C., and                     : **OF ITS MOTION FOR PARTIAL**
QATAR FOUNDATION FOR                               : **SUMMARY JUDGMENT**
EDUCATION, SCIENCE AND                             :
COMMUNITY DEVELOPMENT,                             :
                                                   :
                        Defendants.                :
-------------------------------------------------------------x

Respectfully submitted,
SQUIRE PATTON BOGGS (US) LLP


By: /s/ Aneca E. Lasley
        Aneca E. Lasley
        Christopher F. Haas
        Squire Patton Boggs (US) LLP
        2000 Huntington Center
        41 South High Street
        Columbus, OH 43215
        Telephone: 614-365-2700
        Facsimile: 614-365-2499
        Email: aneca.lasley@squirepb.com
        Email: christopher.haas@squirepb.com

        Stephanie E. Niehaus
        Squire Patton Boggs (US) LLP
        30 Rockefeller Plaza, 23rd Floor
        New York, New York 10112
        Telephone: (212) 8729800
        Facsimile: (212) 872-9815
        Email: stephanie.niehaus@squirepb.com

        *Attorneys for Defendant Qatar Luxury*
        *Group S.P.C.*

# TABLE OF CONTENTS

**Page**

I.  Introduction ............................................................................................................. 1

II.  QLG's Liability As Guarantor Ended on July 8, 2017 ........................................ 1

    A.  QLG Fashion Delivered Proper Notice Of Intent To Tender Vacant Possession .......................................................................................... 1

    B.  Thor Does Not Dispute That QLG Fashion Surrendered The Premises In The Condition Required By The Lease ............................. 3

    C.  The Keys Were Constructively Delivered As Of Termination............... 4

II.  Thor Is Not Entitled To Create A New Remedy Arising From QLG Fashion's Failure to Build Out The Premises............................................................... 5

III.  Thor Cannot Elect §19.3 Against QLG .............................................................. 6

IV.  Thor Has Offered No Evidence of Mutual Mistake, And Is Bound By Its Negligence ......................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2001 Commerce St. Corp. v. Star Enter.,*
788 N.Y.S.2d 149, 150 (App. Div. 2005) ...................................................................9

*Alle Processing Corp. v. First Class Rest. Corp.,*
856 N.Y.S.2d 496 (Civ. Ct. 2008) ...........................................................................2

*Atrium 680 LLC v. 680 Cinema Corp,*
2003 NYLJ LEXIS 371, *14 ...................................................................................3

*In re Brooklyn Tr. Co.,*
295 N.Y.S. 1007 (Sup. Ct. 1936) ............................................................................2

*Chumley's Bar & Rest. Corp. v. Bedford Ct. Assoc.,*
174 A.D. 2d 398, 400 (App. Div. 1991) ...................................................................2

*Citibank, N.A. v. Morgan Stanley & Co. Int'l, PLC,*
797 F. Supp. 2d 254 (S.D.N.Y. 2011) .....................................................................9

*De Sole v. Knoedler Gallery, LLC,*
974 F. Supp. 2d 274 (S.D.N.Y. 2013) ...................................................................10

*Dean/Wolf Architects v. Gottlieb,*
2019 NY Slip Op 30837(U) (Sup. Ct.) .....................................................................2

*First Nat'l City Bank v. Wall St. Leasing Corp.,*
363 N.Y.S.2d 699 (Civ. Ct. 1974) ...........................................................................5

*Fletcher v. Rodriguez,*
3 N.Y.S.3d 901 (Sup. Ct. 2015) ..............................................................................7

*Garsau Realty Corp. v. Kohler,*
282 N.Y.S. 822 (City Ct. 1935) ...............................................................................2

*George Backer Management Corp. v. Acme Quilting Co.,*
385 N.E.2d 1062 (N.Y. 1978) ..................................................................................9

*Granfeld II, LLC v. Kohl's Dept. Stores, Inc.,*
2015 N.Y. Misc. LEXIS 2424 (Sup. Ct. July 13, 2015) .......................................5, 6

*Integrity Ins. Co. v. Marine Midland Bank-Western,*
396 N.Y.S.2d 319 (Sup. Ct. 1977) ...........................................................................4

*L&B 57th St., Inc. v. E.M. Blanchard, Inc.*,
143 F.3d 88 (2d Cir. 1998)..................................................................................7

*Landmark Ins. Co. v. Hensam Enters.*,
2011 U.S. Dist. LEXIS 84111 (S.D.N.Y. July 28, 2011) ..........................................2

*In re Mills*,
158 N.Y.S. 1100 (App. Div. 1916) .........................................................................4

*Netherlands Shipmortgage Corp. v. Madias*,
554 F. Supp. 375 (S.D.N.Y. 1983) .........................................................................2

*Ross v. Food Specialties, Inc.*,
6 N.Y.2d 336 (1959) ............................................................................................9

*S. Ferry Bldg. Co. v. 44 Wall St. Fund, Inc.*,
535 N.Y.S.2d 685 (Civ. Ct. 1988) .....................................................................3, 4

**Other Authorities**

1 NY Jur 2d, Actions § 11 .....................................................................................7

I.      **Introduction**

From at least 2013 to 2016, and as a matter of standard practice, Thor negotiated commercial retail leases that limited its recoverable damages in the case of termination.  Following termination of the QLG Fashion Lease and improper recovery of $12 million in damages, Thor filed suit, openly disregarding the unambiguous, agreed-upon language of the Lease and the Guaranty.  To avoid the Lease's damages limitations, Thor has taken various and conflicting positions, as evidenced by the numerous amendments to its complaint.  Thor is now reduced to arguing that its ***unilateral*** negligence should not only be overlooked, but rewarded.  The Guaranty at issue in this case contained three straightforward requirements to cut off liability.  Those requirements were met, yet Thor now demands the Court fashion numerous additional requirements, found nowhere in the Guaranty, to increase its recovery against QLG as guarantor.  Thor further demands that the Court fashion a new damages remedy for buildout costs, reform the applicable damages provision (§19.2 of the Lease) in contradiction to the plain, unambiguous language found not only in QLG Fashion's Lease, but in the leases of at least four other Madison Avenue tenants, and then reform the Guaranty to permit it to elect yet another remedy that is expressly excluded by that agreement.  Thor identifies no legal principle that permits the Court to draft a new Lease and Guaranty because Thor failed to negotiate any of the remedies it seeks.

II.     **QLG's Liability As Guarantor Ended on July 8, 2017.**

A.      **QLG Fashion Delivered Proper Notice Of Intent To Tender Vacant Possession**

The Guaranty required QLG Fashion to deliver a notice of intent to tender vacant possession of the Premises—a notice that was required to terminate the Guaranty.  It is black letter law that continuing guaranties, such as this one,[1] may be terminated "by notice to the creditor

---

[1] Section 2 of the Guaranty states that it "is a continuing guaranty."

revoking [the guarantor's] liability for obligations that may be incurred subsequent to the notice." *Alle Processing Corp. v. First Class Rest. Corp.*, 856 N.Y.S.2d 496, 496 (Civ. Ct. 2008) (citing *27th Street Associates, LLC, v. Lehrer*, 772 N.Y.S.2d 28 (1st. Dept. 2004)).  QLG delivered that notice on July 8, 2015.  Thor cannot deem this termination notice something else to escape its effect.

      Thor further argues that the erroneous date rule does not apply to real property leases. Because the notice served to terminate the Guaranty, ***not*** the Lease, this argument is irrelevant.  A guaranty is "to be regarded as [a] separate contract[]" from the underlying agreement.  *In re Brooklyn Tr. Co.*, 295 N.Y.S. 1007, 1018 (Sup. Ct. 1936); *accord Netherlands Shipmortgage Corp. v. Madias*, 554 F. Supp. 375, 385 (S.D.N.Y. 1983) ("the guaranty is a separate contract" from the underlying agreement); *Garsau Realty Corp. v. Kohler*, 282 N.Y.S. 822, 824 (City Ct. 1935) ("The contract of guaranty is a separate contract and, by no stretch of the imagination, can the guarantor be said to stand in the shoes of the tenant.")[2]

      The Guaranty contains no temporal limitation on QLG Fashion surrendering the Premises, unlike other guaranties.  Despite this, Thor dismisses these other guaranties as merely "guaranties containing 'better' language."  (Opp. at 6.)  Courts "cannot enforce a nonexistent provision" in a contract, and there is no provision in the Guaranty barring earlier surrender of the Premises. *Dean/Wolf Architects v. Gottlieb*, 2019 NY Slip Op 30837(U), ¶ 5 (Sup. Ct.); *see also Landmark Ins. Co. v. Hensam Enters.*, 2011 U.S. Dist. LEXIS 84111, at *20 n.7 (S.D.N.Y. July 28, 2011)

---

    [2] *Chumley's Bar & Rest. Corp. v. Bedford Ct. Assoc.*, the sole case cited for the exclusion of real estate leases from the erroneous date rule, is an outlier whose rationale has never been adopted by any other court, and which relied solely on cases predating New York's adoption of the erroneous date rule in 1979 by 31 years.  *See id.*, 174 A.D.2d 398, 400 (App. Div. 1991) (citing *A. Dubois & Son, Inc. v. Goldsmith Bros.*, 273 App. Div. 306 (1948); *98 Delancy Street Corp. v. Barocas*, 82 N.Y.S.2d 802, 805 (Sup. 1948)).

(noting that a plaintiff "could not have reserved its rights to enforce nonexistent terms" in a contract).

Finally, Thor's contention that QLG Fashion's intent to sublet invalidated the notice of intent is nonsensical. As Thor's counsel noted on September 3, 2015, QLG Fashion intended to find "a short-term sublease" for the remainder of the two-year notice period, when it would have had a possessory interest in the premises absent earlier termination by Thor. (56.1 ¶31.) QLG Fashion's notice was proper and effective.

### B. Thor Does Not Dispute That QLG Fashion Surrendered The Premises In The Condition Required By The Lease.

A tenant tenders the surrender of leased premises. *See, e.g., Atrium 680 LLC v. 680 Cinema Corp*, 2003 NYLJ LEXIS 371, *14 (noting that a tenant is "tendering a surrender"); *S. Ferry Bldg. Co. v. 44 Wall St. Fund, Inc.*, 142 Misc. 2d 54, 57, 535 N.Y.S.2d 685, 688 (Civ. Ct. 1988) (noting that where a tenant "tendered a . . . surrender" and had no "dominion or control over the premises," the surrender was valid and accepted). Accordingly, the "condition required pursuant to the terms of the Lease" for "tendering vacant possession" is the condition set forth under the surrender provision of the Lease, §21.5.

Thor does not dispute that QLG Fashion complied with the surrender provision. Instead, Thor argues that the "Tenant's Work" provision set forth in §1.3(B) of the Lease required QLG Fashion to surrender the premises "built-out in accordance with Madison Avenue Standards." (Opp. at 7.) First, §1.3(B) never references "surrender." Second, "Tenant's Work" is work required "for operation of Tenant's business therein." The entire point of tendering vacant possession is that the tenant is no longer operating a business in the Premises. Third, "Madison Avenue Standards," as set forth in §1.3(B), required QLG Fashion to operate a store that is "open for business to the public fully fixtured, stocked and staffed." There is no way that QLG Fashion

could surrender the Premises consistent with §21.5, but also leave it open for business to the public, fully fixtured, stocked, and staffed, particularly in light of §6.1's requirements that QLG Fashion remove virtually all of its property from the store (not to mention the peculiar implications of Thor's belief that it was entitled to receive a staff of retail employees at surrender). QLG Fashion surrendered the premises in the condition required by the Lease for such surrender, which Thor does not—and cannot—dispute.

### C.     The Keys Were Constructively Delivered As Of Termination.

As noted in QLG's motion, delivery of keys already in Thor's possession would have been "an idle and unmeaning ceremony," *In re Mills*, 158 N.Y.S. 1100, 1104 (App. Div. 1916), as the keys were constructively delivered at the moment QLG Fashion lost dominion and control over them—December 23, 2015, the date the Lease was terminated. Thor argues that the delivery provision must be "strictly satisfied," ignoring that under New York law, "[d]elivery consists of the act by which goods are placed within the ***actual or constructive possession*** of another. A ***constructive delivery*** takes place when the conduct of the parties is such as to be ***inconsistent with any other supposition than that there has been a change in the nature of the holding***." *Integrity Ins. Co. v. Marine Midland Bank-Western*, 396 N.Y.S.2d 319, 321 (Sup. Ct. 1977) (emphasis added). Where a landlord may "take complete possession of the premises without need of a summary proceeding" through use of the keys in its possession, the keys (and the premises) are delivered as a matter of law. *S. Ferry Bldg. Co.*, 535 N.Y.S.2d at 687. On the date the Lease terminated, QLG Fashion no longer had any legal right to the keys, which were legally and physically in Thor's possession.

Thor's argument regarding the "symbolic delivery" evidenced by keys is irrelevant. Leased premises will be deemed surrendered where the landlord "at all times [could] have taken complete possession of the premises," regardless of whether the symbolic act of delivering the

keys has taken place.  *First Nat'l City Bank v. Wall St. Leasing Corp.*, 363 N.Y.S.2d 699, 701 (Civ. Ct. 1974).  There is no dispute that Thor took complete possession on December 23, 2015 at 11:59 P.M. ***and did so through use of the keys in its possession***.

Based on the foregoing, QLG's liability as Guarantor ended on July 8, 2017.

## II.   Thor Is Not Entitled To Create A New Remedy Arising From QLG Fashion's Failure to Build Out The Premises.

In *Granfeld II, LLC v. Kohl's Dept. Stores, Inc.*, 2015 N.Y. Misc. LEXIS 2424 (Sup. Ct. July 13, 2015), the landlord reserved the right to "pursue any or all of the following remedies in addition to ***all other rights and remedies provided at law or in equity***[.]"  *Id.* at *4.  The remedies included were costs and fees, unpaid rent owed at termination, accelerated annual fixed rent discounted to present value, and any other sum of money and damages owed by the tenant.  *Id.* at *4-5.  Here, Thor reserved its "***rights and remedies hereunder, at law and in equity***" for QLG Fashion's failure to build out, in a Lease containing two express damages provisions—one for unpaid Additional Rent as it becomes due, net of certain offsets, a second for accelerated Fixed and Additional Rent reduced to present value.  The *Granfeld* court determined that the virtually identical language of the lease at issue in that case did not give rise to an additional remedy that the sophisticated parties had failed to include.  *Id.* at *21-22.

Thor attempts to avoid the result in *Granfeld* by rewriting the language of the *Granfeld* lease.  Thor puzzlingly states that the provision regarding rights and remedies at law or in equity does not exist in the *Granfeld* case (much like it believes the word "Additional" does not exist in §19.2, the phrase "specifically excluded" does not exist in §2 of the Guaranty, and the word "surrender" does not exist in §21.5).  Thor then argues that §19.4, which permits it to recover "any sums or damages to which . . . Landlord may be lawfully entitled by reason of any default hereunder on the part of Tenant," is a "significantly broader" provision than the

- 5 -

identical provisions referenced above.  It is literally the same provision rephrased, omitting the concept of equity.

Regardless, Thor must show that it may lawfully recover damages apart from the express damages provisions the parties negotiated.  Thor cites no case supporting the creation of this additional remedy.  Instead, it argues generally that a landlord may seek damages for a breach of a lease.  Thor does have the right to seek damages—the damages the sophisticated parties to the Lease negotiated, not "something that the parties have neglected to specifically include."  *Id*. at *21-22.[3]

## III.  **Thor Cannot Elect §19.3 Against QLG.  Even If It Could, It Has Already Elected §19.2.**

Thor chose not to pursue the tenant for breach of the Lease, electing instead to sue only QLG on the Guaranty.  As such, its recovery from the guarantor of damages flowing from the tenant's breach of the Lease is limited to the damages permitted under the Guaranty.  Section 2 of the Guaranty "specifically excludes" all accelerated damages from amounts owed by QLG under the Guaranty incurred prior to the Final Obligation Date.  Thor argues that the Guaranty contains a separate unwritten and contradictory provision where, if the conditions are not satisfied and a Final Obligation Date is not set, then QLG would somehow be liable for accelerated damages.  This argument not only grossly misconstrues the Guaranty, it makes no sense on its face.  The Final Obligation Date is a temporal cutoff of liability.  There are only two possible time periods: before the Final Obligation Date, and after.  QLG is liable for all amounts due and payable by QLG Fashion before the Final Obligation Date, specifically excluding accelerated damages, and liable for nothing after that date.  There is no other possible time period in the Guaranty, and no

---

[3] Thor's argument that the New York Court of Appeals would not uphold *Granfeld* is pure, unsupported speculation.  Thor's complete failure to cite a single case casting a speck of doubt on the *Granfeld* decision is further evidence that its desired reformation of the Lease is foreclosed.

provision stating that if the Final Obligation Date is not set, QLG would become liable for accelerated damages.  The exclusion would be meaningless if that were the case, as it expressly applies—and *excludes*—accelerated damages that arise *before a Final Obligation Date is set, whenever that is*.[4]  If the Guaranty meant to include accelerated damages under §19.3 as a remedy available against QLG, it would have.  And regardless, the conditions necessary to terminate the Guaranty were met, barring Thor from recovering against QLG.

Further, even if Thor may elect §19.3 as a remedy against QLG (and it cannot), it is precluded from doing so, because it elected §19.2 in January 2016, when it began withdrawing (albeit improperly) Fixed Rent as it became due each month, consistent with its incorrect interpretation of §19.2, and wholly inconsistent with §19.3.  "There can be an election of remedies only when a choice is made between inconsistent, *alternative*, or mutually exclusive remedies." *Fletcher v. Rodriguez*, 3 N.Y.S.3d 901, 905-06 (Sup. Ct. 2015) (citing 1 NY Jur 2d, Actions § 11) (emphasis added).  After termination, Thor could only recover damages from QLG Fashion.  The Lease set forth two alternative remedies for Thor to elect in recovering its damages: §19.2 and §19.3.  After termination, Thor dutifully calculated the amount of Fixed Rent owed as damages each month (although it should have been limited to Additional Rent), withdrew that amount from the LOC provided as security in accordance with §28.1, and then applied those funds in full satisfaction of QLG Fashion's debts.  *See L&B 57th St., Inc. v. E.M. Blanchard, Inc.*, 143 F.3d 88, 91 (2d Cir. 1998) (noting that once a landlord treats funds from a letter of credit as its own, the tenant's "debt should have been reduced accordingly").  In doing so, Thor gained an undeniable

---

[4] This provision also demonstrates that termination of the Lease has no bearing on the performance of the conditions necessary to terminate the Guaranty, including tendering vacant possession.  If termination of the Lease prevented termination of the Guaranty, then there would be no reason to carve out post-Lease-termination accelerated damages from amounts owed by QLG on or before the date the Guaranty terminated.

advantage—it not only gained $12 million, but its election permitted it to structure its recovery so as not to prejudice itself with its mortgage lender. (56.1 ¶100.) And QLG clearly suffered a detriment, as Thor elected the remedy enforceable against it, rather than the remedy enforceable only against QLG Fashion.

These remedies are not consistent, and do not rely on the same facts. To recover under §19.2, Thor must rely on the facts of the actual rent received from the replacement tenant, coupled with Thor's reletting costs. Section 19.3 relies on wholly different facts—Thor must calculate future Fixed and Additional Rent reduced to present value, and QLG must provide evidence of a fair and reasonable rental value that need not be based on the actual rent received from the replacement tenant. Thor cannot make these remedies consistent simply by treating its recovered damages as fungible until a judgment is entered.[5]

Finally, Thor's argument that it "lacked complete knowledge of the facts, and a clear understanding of how damages would be calculated under" §19.2 and §19.3 is belied by the Affirmation of Justin Xenitelis served with Thor's motion for summary judgment. Thor entered into the lease with Tom Ford on July 18, 2016. Xenitelis stated that "[b]y the time Thor entered into the lease with Tom Ford," Thor had engaged in "*careful study* of the document engendered by the present dispute" (i.e., the Lease). Xenitelis Affir. ¶23 (emphasis added). Thor knew and knows what was in the Lease—it simply does not wish to be bound by it.[6]

## IV.   Thor Has Offered No Evidence of Mutual Mistake, And Is Bound By Its Negligence.

---

[5] Thor's contention that it never elected a remedy further means that Thor had no contractual basis to draw any money from the LOC, and therefore breached both the LOC and the Lease.

[6] Additionally, Thor's admission that it has never calculated damages under §19.3 is further evidence that it elected §19.2—there is no requirement that damages under §19.3 be calculated by the Court.

The party seeking reformation on the basis of mutual mistake must prove that mutual mistake by "clear and convincing evidence." *Citibank, N.A. v. Morgan Stanley & Co. Int'l, PLC*, 797 F. Supp. 2d 254, 265 (S.D.N.Y. 2011). "[A] petitioning party has to show in no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties." *George Backer Management Corp. v. Acme Quilting Co.*, 385 N.E.2d 1062, 1066 (N.Y. 1978). Thor provides no evidence whatsoever that the parties to the Lease actually agreed to include Fixed Rent in §19.2. And Thor cannot contort QLG Fashion's counsel's failure to recall the Lease negotiations into an admission the parties did not agree to the unambiguous language of the Lease.[7]

Thor states that at least three of its attorneys failed to read the Lease and notice the alleged mistake.[8] "Failure to read a written instrument before signing is gross negligence and in the absence of proof of fraud or mutual mistake binds the signers and precludes reformation." *Ross v. Food Specialties, Inc.*, 6 N.Y.2d 336, 339 (1959). "At best, [where a] plaintiff's negligence, or 'conscious ignorance,' regarding the contents of a [contract]" is at issue, the plaintiff has only "established a unilateral mistake on its part." *2001 Commerce St. Corp. v. Star Enter.*, 788

---

[7] Thor expends a significant portion of its brief (Opp. at 21-23) arguing that these cases are irrelevant to reformation but also noting that they concern a court's ability to transpose, reject, or supply new words to a contract—i.e., reform it—to carry out the parties' intent. Whatever the point of this section, Thor makes no argument that reformation of the Lease is justified on these grounds.

[8] The fact that a virtually identical damages provision as that found in §19.2 of the QLG Fashion Lease appears in at least four other lease agreements entered into by Thor further undermines any notion that the alleged mistake was mutual. Not surprisingly, Thor fought QLG's efforts to require production of these other lease agreements in discovery.

N.Y.S.2d 149, 150 (App. Div. 2005) (finding claim for mutual mistake meritless where a lease was clear and unambiguous and no evidence supported reformation or rescission).[9]

Based on the foregoing, and as further demonstrated in QLG's Motion for Summary Judgment and Memorandum in Support, Thor is entitled to recover damages for QLG Fashion's breach of its Lease, but any recovery as against the guarantor, QLG, is limited to Additional Rent subject to the offsets provided for in §19.2 of the Lease and liability for the same is cutoff as of July 8, 2017.

Respectfully submitted,
SQUIRE PATTON BOGGS (US) LLP

By: /s/ Aneca E. Lasley
    Aneca E. Lasley
    Christopher F. Haas
    Squire Patton Boggs (US) LLP
    2000 Huntington Center
    41 South High Street
    Columbus, OH 43215
    Telephone: 614-365-2700
    Facsimile: 614-365-2499
    Email: aneca.lasley@squirepb.com
    Email: christopher.haas@squirepb.com

    Stephanie E. Niehaus
    Squire Patton Boggs (US) LLP
    30 Rockefeller Plaza, 23rd Floor
    New York, New York 10112
    Telephone: (212) 8729800
    Facsimile: (212) 872-9815
    Email: stephanie.niehaus@squirepb.com

    *Attorneys for Defendant Qatar Luxury Group S.P.C.*

---

[9] The Court recognized the role of negligence with regard to the various mistake doctrines in cases of both "reformation or rescission of a contract." *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 319 (S.D.N.Y. 2013).